**ALUMINUM COMPANY OF AMERICA,**
**Plaintiff,**

v.

**DEPARTMENT OF the TREASURY OF the STATE OF MICHIGAN et al.,**
**Defendants.**

**Civ. No. 39649.**

United States District Court,
E. D. Michigan, S. D.

Oct. 8, 1974.

Gerald C. Simon, Fischer, Franklin & Ford, Detroit, Mich., for plaintiff.

Charles E. Liken, Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM AND ORDER

DeMASCIO, District Judge.

The plaintiff, Aluminum Company of America (Alcoa), sought to withdraw from doing business in Michigan as a foreign corporation. Accordingly, in May 1968, Alcoa filed with the Corporation Franchise Fee Division of the Department of Treasury, a "Notice of Withdrawal of Foreign Corporation from Michigan." The defendants acknowledged receipt of this notice by letter dated September 23, 1968, and acknowledged therein that Alcoa was relieved from paying further privilege fees. In November 1971, field examiners of the Michigan Department of the Treasury visited Alcoa's main office and conducted an audit of its books. The examiners reported that Alcoa has maintained sales offices and personnel in four Michigan cities and made sales to Michigan purchasers from Michigan and out-of-state inventories. On January 19, 1972, pursuant to M.C.L.A. § 450.304, the defendant issued a determination of corporate franchise fees due and owing for the years 1968–1971. Alcoa requested a redetermination pursuant to M.C. L.A. § 450.309. Negotiations between the parties did not solidify, so on January 8, 1973, the defendants issued their redetermination. This redetermination was completely based upon information disclosed by the audit and affirmed Alcoa's indebtedness for privilege fees in the sum of $214,884.50.

Alcoa filed this complaint on February 9, 1973, without responding to defendants' redetermination. The complaint avers (¶ 14) that Alcoa does not have a "plain, speedy and efficient remedy" in the state courts. Alcoa alleges that it is not liable for the assessed fees because it is engaged in a purely interstate business and, therefore, prays for injunctive and declaratory relief. Our jurisdiction is premised upon averments that the imposition of Michigan franchise fees on its purely interstate business violates the interstate commerce and due process clauses of the United States Constitution. Alcoa simultaneously petitioned for the convening of a three-judge district court to enjoin collection of the fees and to resolve the constitutional issues presented.[1]

On February 26, 1973, the Attorney General timely filed a motion to dismiss. He contends that the Johnson Act, 28 U.S.C. § 1341, deprives this court of jurisdiction.[2] That Act provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax un-

---

[1] Alcoa never served this petition upon the defendants. Rather, Alcoa assumed this court would sua sponte take steps to constitute a three-judge court. The defendants finally received a brief supporting Alcoa's petition on March 13, 1973, but this was approximately two weeks after the Attorney General filed a responsive pleading attacking jurisdiction.

[2] The Attorney General argues, and we agree, that a single district judge must first determine whether there is jurisdiction and ascertain that substantial federal questions are present prior to acting upon the prayer for relief or the petition for a three-judge court. Jones v. Branigin, 433 F.2d 576 (6th Cir. 1970). In a chamber conference, the Attorney General was kind enough to assure the court the state defendants would not take steps to effect collection of the fees they believe due from Alcoa. The plaintiff then agreed to amend its complaint to delete its request for injunctive relief. Since plaintiff now seeks only a non-coercive declaratory judgment, there is no need, at this time, to consider plaintiff's initial request for a three-judge court. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L. Ed.2d 644 (1963); United States v. Nevada Tax Commission, 439 F.2d 435 (9th Cir. 1971).

der State law where a plain, speedy and efficient remedy may be had in the courts of such State."

The Johnson Act applies to requests for declaratory judgments as well as injunctive relief. Great Lakes, etc., Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); Wyandotte Chemicals Corp. v. City of Wyandotte, 321 F. 2d 927 (6th Cir. 1963). It is apparent that if Alcoa has a "plain, speedy and efficient remedy" in the state courts, we must decline jurisdiction and dismiss the complaint. We conclude, however, that Alcoa does not. and we retain jurisdiction.

The defendants contend that the procedure outlined in §§ 9 or 10 of 1921, P. A. 85 (M.C.L.A. §§ 450.309–450.310) affords Alcoa an adequate remedy in the state courts making the Johnson Act operative. Section 9 provides for an appeal to the Corporation Tax Appeal Board by a plaintiff seeking to challenge a redetermination. The Board's decision in turn may be appealed directly to the Michigan Court of Appeals. In like manner, § 10 provides that a taxpayer may pay the assessed fee, petition for refund and thereafter appeal an unfavorable agency decision through the state appellate court system. The defendants reinforce this contention by arguing that § 4 of the same Act assures Alcoa they are included in §§ 9 and 10. Section 4 of the Act (M.C.L.A. § 450.304) describes corporations covered by its provisions in the following fashion:

"450.304 Sec. 4. Every cooperative association and every profit corporation organized or doing business under the laws of this state, or having the privilege to do business, employing capital or persons, owning or managing property or maintaining an office, or engaging in any transaction, in this state . . . shall pay . . . an annual fee . . .."

More specifically, the defendant argues that § 4 includes all corporations "employing capital or persons, owning or managing property or maintaining an office, or engaging in any transaction . . . ." within the scope of the Act. However, before this court, Alcoa has always contended that it is precluded from invoking §§ 9 or 10 because these remedies are available only to corporations doing business under the laws of the state; that the state affirmed Alcoa's notice of withdrawal in writing; that since receipt of the state's reply to its withdrawal notice, it is neither "doing business under the laws of this state" nor does it have "the privilege to do business" in this state.

█ We have reviewed the Act in its entirety and have concluded the portion of the Act relied upon by the defendants is intended to qualify and explain the phrases "doing business" or "privilege to do business." It does not enlarge the scope of the Act. Nor can this portion of the Act justify the all encompassing interpretation urged upon us by the Attorney General. Certainly, an interpretation of the Act which sanctions the imposition of a tax upon corporations, "engaging in any transaction" in the state would be unconstitutional if applied to wholly interstate transactions. Wisconsin & Michigan Steamship Co. v. Corporation & Securities Commission, 371 Mich. 61, 67, 123 N.W.2d 258 (1963). Furthermore, the defendant Franchise Fee Division premised its assessment against Alcoa upon a finding that Alcoa was "doing business" or was "privileged to do business" in Michigan. It is apparent that the provisions of the Act are intended to include only corporations which in fact are "doing business" or "privileged to do business" in Michigan.

█ We agree that defendant Franchise Fee Division had jurisdiction to conclude from its audit findings that Alcoa was in fact "doing business" in Michigan. Inherent in its agency duty to assess franchise fees is the duty to determine which corporations are liable

under the Act for the fees.[3] But it is this very decision that is reviewable pursuant to § 9 and § 10 of the Act. Since the time for perfecting an appeal to the Corporation Tax Appeal Board has expired, Alcoa is foreclosed from adopting this procedure. Since Alcoa reasonably believed, rightly or wrongly, that §§ 9 and 10 were unavailable, and since it filed this action in a timely fashion, Alcoa's failure to appeal its redetermination should not preclude it from relief in a federal court if, indeed, it is entitled to any relief. Because an appeal is unavailable by the passage of time, we are persuaded that Alcoa's remedy is neither efficient nor adequate. Hillsborough v. Cromwell, 326 U.S. 620, 628, 66 S.Ct. 445, 90 L.Ed. 358 (1946). Nor can we find a remedy "plain, speedy and efficient" which requires a litigant to urge the state to excuse a tardy appeal upon a showing of excusable neglect. It is more reasonable to find that Alcoa's delay would not be treated as excusable neglect. Cf. Varian Associates v. County of Santa Clara, California, 317 F.Supp. 888 (N.D.Cal. 1970). Requiring a party to seek, with hat in hand, administrative remedies, which are obviously foreclosed, is not the kind of remedy referred to in the Johnson Act.[4]

■■■ Defendants further contend that in the alternative Alcoa's remedy pursuant to the provisions of the Court of Claims Act is sufficiently adequate to divest federal jurisdiction under the Johnson Act. But, in Michigan, the voluntary payment of a tax is not recoverable. For standing to recover taxes once paid, it must appear that payment was involuntary or the result of duress. City of Detroit v. Martin, 34 Mich. 170 (1876); Beachlawn, etc., Corp. v. St. Clair Shores, 370 Mich. 128, 121 N.W.2d 427 (1963). Alcoa could never assert that payment was either coerced or made under duress. Nor could Alcoa's payment be treated as involuntary. Alcoa has consistently asserted that the assessment is illegal because they are not "doing business" in Michigan. If Alcoa were to make payment after thus protesting, we are confident their payment would be treated as voluntary. Detroit Edison Co. v. State, 361 Mich. 290, 105 N.W.2d 227 (1960); Spoon-Shacket Co. v. Oakland County, 356 Mich. 151, 97 N. W.2d 25 (1959).[5] In Michigan, the payment of an alleged illegal tax under protest is voluntary payment and not recoverable. City of Detroit v. Martin, *supra*. Notwithstanding the concept of non-recoverability of voluntary payments, the Court of Claims Act does not provide for interest during the time the taxpayer's money is devoted to state use. It has been held that a remedy which does not provide the right to recover interest is indeed an inadequate remedy. United States v. Livingston, 179 F.Supp. 9 (E.D.S.C.1959), aff'd, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 17, 19 (1960);

---

3. An agency authorized to act has inherent authority to determine when to act. 2 Am. Jur.2d Administrative Law § 332. Nor may a federal court determine whether a party is outside the administrative agency's statutory authority until that party exhausts its administrative remedies. Myers v. Bethlehem, etc., Corp. 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); Macauley v. Waterman S. S. Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839 (1946).

4. We are mindful that Henry v. Metropolitan Dade County, 329 F.2d 780, 781 (5th Cir. 1964) took the view that "the expiration of time in which the state suit might have been brought does not result in the destruction of a plain and simple remedy principle specified in the Johnson Act." That view, however, was premised upon the notion that if it were otherwise, an aggrieved or disgruntled taxpayer need simply wait for the statute of limitations to run and automatically confer jurisdiction upon a federal court. But here, we have determined that Alcoa acted reasonably in view of the state's acknowledgment of its withdrawal notice and advice that it was relieved from paying further privilege fees. And, further Alcoa's filing of this action was timely.

5. The Attorney General has directed our attention to Copper S.S. Co. v. State of Michigan, 194 F.2d 465 (6th Cir. 1952). The court in that case, however, did not consider the concept of recoverability of voluntary payments.

**1148**

Nutt v. Ellerbe, 56 F.2d 1058 (E.D.S.C. 1932); Mullaney v. Hess, 189 F.2d 417, 13 Alaska 276 (9th Cir. 1951).[6]

In our view, since the statute of limitations precludes an assured appeal under §§ 9 and 10 of the Act, M.C. L.A. §§ 450.309–450.310, Hillsborough v. Cromwell, *supra*, and without a provision for payment of interest in the Court of Claims Act and with the uncertainty of recoverability of a voluntary payment, Alcoa's state remedy does not meet the "plain, speedy and efficient" standard anticipated by the Johnson Act to preclude district court intervention. It is not apparent anywhere that Congress intended by the Johnson Act to arbitrarily foreclose federal remedies. Where, as here, the state remedy is uncertain at times and unavailable at other times, we are reluctant to close the courtroom door to a plaintiff who timely asserts constitutional issues. We have acknowledged the agency's inherent right to determine whether plaintiff is among the class of foreign corporations doing business in Michigan and, therefore, subject to the tax. And, we do not, by retaining jurisdiction, challenge that right. Rather, we assure to this plaintiff the equally compelling right to a federal forum to litigate whether the agency erred in this judgment. If plaintiff is indeed wholly engaged in interstate business, that error in judgment would reach constitutional proportions which we are obliged to resolve.

Finally, we note that although we retain jurisdiction, it does not follow that we must take steps to constitute a three-judge court. We are persuaded a single district judge has jurisdiction to prevent the administration of a constitutional statute in a manner which attains unconstitutional results. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Bartlett & Co. Grain v. State Corp. Com'n of Kan-

sas, 223 F.Supp. 975 (D.Kan.1963); Sardino v. Federal Reserve Bank of New York, 361 F.2d 106 (2nd Cir. 1966); Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). American Commuters Assoc. v. Levitt, 405 F.2d 1148 (2nd Cir. 1969). Plaintiff has not attacked the constitutionality of the state statute, but only the allegedly unconstitutional judgment of state officials in administering a constitutional statute. Wright Law Federal Courts, 2d Ed., § 60, p. 189.

Accordingly, it is ordered that the defendants' Motion to Dismiss be and the same is hereby denied.

---

6. Plaintiff also alleges that since it has a federal remedy, it is precluded from pursuing a remedy in the Court of Claims (M.C. L.A. § 600.6440). Although the Act so pro-

vides, the Johnson Act would prevent the Court of Claims from finding an adequate federal remedy.