ALUMINUM COMPANY OF AMERI-
CA, Plaintiff-Appellee and
Cross-Appellant,

v.

DEPARTMENT OF the TREASURY
OF the STATE OF MICHIGAN et al.,
Defendants-Appellants and Cross-Ap-
pellees.

Nos. 75–1354, 75–1415.

United States Court of Appeals,
Sixth Circuit.

Aug. 28, 1975.

Frank J. Kelley, Atty. Gen. of Mich.,
Lansing, Mich., Robert A. Derengoski,
Sol. Gen., Richard R. Roesch and Charles
E. Liken, Asst. Attys. Gen., for defend-
ants-appellants.

Gerald C. Simon, Fischer, Franklin &
Ford, William C. Potter, Jr., Detroit,
Mich., for plaintiff-appellee.

Before CELEBREZZE, MILLER and
ENGEL, Circuit Judges.

CELEBREZZE, Circuit Judge.

This appeal concerns application of the
Tax Injunction Act of 1937, 28 U.S.C.
§ 1341 (1970), which forbids federal court
injunctions against state tax assess-
ments, levies, and collections "where a
plain, speedy and efficient remedy may
be had in the courts of such State."

The District Court concluded that Ap-
pellee did not have such a State remedy
and denied Appellants' Motion to Dismiss
Appellee's suit seeking declaratory relief
from assessed State corporate franchise
fees. The District Court also concluded
that it would be inappropriate to con-
vene a three-judge court to resolve the
issues raised. The District Court has
certified that the taking of an interlocu-
tory appeal from its denial of the Motion
to Dismiss would "materially advance
the ultimate termination of the litiga-
tion." Pursuant to 28 U.S.C. § 1292(b)
we granted leave to appeal.

The facts are not in dispute. The Aluminum Company of America (Alcoa) qualified to do business as a foreign corporation in Michigan on March 8, 1929. In May of 1968 Alcoa filed a "Notice of Withdrawal of Foreign Corporation from Michigan" with the Franchise Fee Division of the Michigan Department of Treasury. The Department of Treasury sent Alcoa a brief form letter dated September 23, 1968, acknowledging receipt of the notice of withdrawal and informing Alcoa that it was "relieved from filing further reports or paying any further privilege fees." In 1971, a field audit was conducted by the Michigan Department of Treasury at Alcoa's main office in Pittsburgh, Pennsylvania. The audit revealed that Alcoa (1) had leased sales office space and office machines in Detroit, (2) had office and sales personnel at the Michigan locations and (3) had sales to Michigan purchasers from out of state and from Michigan consigned inventories. On January 19, 1972, the Department of Treasury issued a determination that Alcoa owed franchise fees for the years 1966 through 1971. The assessments for the years 1968 through 1971 are at issue here as the Department of Treasury concluded that Alcoa was by virtue of its sales offices in Michigan "doing business" within the meaning of the Fees, Taxes and Charges Act, § 4, Mich.Comp.Laws Ann. § 450.304 (1967).[1]

In a letter dated February 14, 1972, Alcoa's Michigan counsel acknowledged receipt of the determination letter and stated,

> On behalf of our client, we hereby request a redetermination of said fees, for each of the years involved, pursuant to Section 9 [Mich.Comp.Laws Ann. § 450.309].[2]

In a February 23, 1972, letter the Department of Treasury outlined its position and on April 4, 1972, representatives of Alcoa and the Department of Treasury met and discussed the matter.

On April 5, 1972, Appellants' attorneys sent Appellee's counsel a letter requesting specific information about Appellee's activity in Michigan for purposes of preparing a redetermination. Appellee did not answer this letter, and on May 2, 1972, the Franchise Fee Division sent a similar letter to Appellee. Having received no answer, the Division issued a redetermination on January 8, 1973, again concluding from review of available information that Appellee was "doing business" in Michigan.

The next step in the Section 9 remedy which Alcoa was utilizing would have been filing an appeal with the Michigan Corporation Tax Appeals Board. Section 9 requires that an appeal to the Board be taken within 30 days after notification of the redetermination. On the 30th day following notification of the redetermination Appellee filed this action in District Court and allowed the time for pursuing the next step of the Section 9 remedy to expire.

In the District Court Appellee prayed for declaratory and injunctive relief. The prayer for injunctive relief was dropped when Appellants agreed to stipulate that no effort to collect the fees would be made until a final determination on the merits was made by a court of competent jurisdiction.

The Michigan Fees, Taxes and Charges Act was amended by Public Acts 1975, No. 13, which was given immediate effect on March 25, 1975. Section 10 was amended into an alternative and mutually exclusive remedy from the remedy provided in Section 9. However, this dispute arose in January of 1972, when the Department of Treasury deter-

---

1. Sec. 4. Every cooperative association and every profit corporation organized or doing business under the laws of this state, or having the privilege to do business, employing capital or persons, owning or managing property or maintaining an office, or engaging in any transaction, in this state . . . shall pay . . . an annual fee . . . ..

2. Letter from Gerald C. Simon, Esq., to the Corporation Franchise Fee Division, Michigan Department of Treasury, February 14, 1972, Defendant's Exhibit "B".

mined that Appellee was liable for franchise fees for the years 1966 through 1971. When Alcoa requested a redetermination of its franchise fee assessment in February of 1972, the remedy afforded by Section 10 was in addition to that provided by Section 9.[3]

The 1972 version of Section 10 stated that "[t]he remedy provided by this section shall be additional to and independent of that afforded by section 9."

■ Before we determine whether the Section 9 and 10 remedies are sufficient to raise the § 1341 bar to federal adjudi-

cation of this case we must determine whether § 1341 applies to a suit seeking only declaratory relief. In *Wyandotte Chemicals Corp. v. City of Wyandotte,* 321 F.2d 927 (6th Cir. 1963), this Court concluded that the Tax Injunction Act applies to suits for declaratory relief, relying on *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943).

The *Huffman* Court stated that it was of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collec-

---

**3.** Sec. 9. (1) Every corporation subject to the provisions of this act shall be notified as soon as practicable of the computation of its franchise fee made pursuant to sections 5, 5a, 5b, 5c and 5d[1] if it has remitted an amount in

  [1]Sections 450.305, 450.305a, 450.305b, 450.305c, 450.305d.

excess of the proper fee or has any further liability with respect thereto. If the corporation shall have remitted an amount in excess of its fee as properly computed pursuant to sections 5, 5a, 5b, 5c and 5d any such excess shall be refunded, or, at the option of the corporation, shall be credited to the account of the corporation for application to any franchise fee liability such corporation may incur thereafter. Any corporation may apply for a redetermination of its franchise fee by filing a written request therefore with the department of treasury within 30 days after receipt of notice of the original computation. The department shall give prompt consideration to such request and the grounds of complaint therein set out and shall promptly redetermine the liability of the corporation.

  (2) Any corporation conceiving itself to be aggrieved by any redetermination may appeal within 30 days after notification thereof to an appeal board composed of the secretary of state, director of the department of commerce and 1 member appointed by the governor who shall be an attorney and serve at the pleasure of the governor. The attorney member appointed by the governor shall be the chairman and the secretary of state its secretary. The attorney member shall receive compensation of $100.00 per day and expenses for time served on the appeal board but not to exceed $2,500.00 per year as total compensation. The appeal board shall recompute the liability of the taxpayer and shall notify the taxpayer and the department promptly on its decision.

  (3) The department or the corporation, within 30 days after notification of the decision, and not after, may appeal from the decision of the appeal board to the court of appeals.

  (4) The appeal board shall prescribe reasonable rules for the conduct of its proceedings. Amended by P.A.1971, No. 97, § 1, Eff. Sept. 1.

  Sec. 10. (1) Any corporation subject to the provisions of this act which has paid to the department of treasury an amount in excess of that which it considers to have been legally due from it for any year, within 3 years from the date of such alleged overpayment and not after, may file with the department a written petition to have refunded to it the amount claimed to have been overpaid. If on the petition and the information and proof filed in support thereof, the department determines that the payment of the fee, tax or charge, or any part thereof, was not required of the petitioner by the provisions of this act, it shall cause a refund thereof to be made or, at the option of the corporation, shall credit any such excessive payment to the account of the corporation for application to any franchise fee liability such corporation may incur thereafter. If the department is of the opinion that the payment made by the petitioner was proper it shall deny the request for refund.

  (2) If any such corporation is not satisfied with the ruling of the department, within 30 days after notification thereof and not after, it may appeal to the appeal board. The appeal board shall enter its order that the corporation is entitled to a refund and the amount thereof or that the claim of the corporation is denied. The appeal board shall prescribe reasonable rules for the conduct of its proceedings.

  (3) The department or the corporation, within 30 days after notification of the decision and not after, may appeal from the decision of the appeal board to the court of appeals.

  (4) The remedy provided by this section shall be additional to and independent of that afforded by section 9.[1]

  [1] Section 450.309.

Amended by P.A.1971, No. 97, § 1, Eff. Sept. 1.

tion of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure.[4]

As Mr. Justice Brennan stated in his opinion concurring in part and dissenting in part in *Perez v. Ledesma,* 401 U.S. 82, 128 n. 17, 91 S.Ct. 674, 698, 27 L.Ed.2d 701 (1971):

> The special reasons justifying the policy of federal noninterference with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts. See generally, S.Rep.No.1035, 75th Cong., 1st Sess. (1937). These considerations make clear that the underlying policy of the anti-tax-injunction statute, 28 U.S.C. § 1341, relied on in *Great Lakes,* bars all anticipatory federal adjudication in this field, not merely federal injunctions.

*See also Helmsley v. City of Detroit,* 320 F.2d 476, 478–479 (6th Cir. 1963); *City of Houston v. Standard-Triumph Motor Co.,* 347 F.2d 194, 197 (5th Cir. 1965). If Michigan afforded Appellee a "plain, speedy and efficient remedy" in State court, then § 1341 deprives the District Court of jurisdiction to consider Appellee's request for declaratory relief, and Appellants' Motion to Dismiss must be granted.

Appellants contend that Sections 9 and 10 afford Appellee two remedies sufficient to raise the § 1341 bar to federal adjudication. The District Court concluded that neither remedy afforded Appellee a "plain, speedy and efficient" method for challenging its franchise fee liability.

■ The District Court concluded that because the time for utilizing Section 9 had run it did not afford Appellee a remedy which satisfied § 1341 and thus federal adjudication of the case was not barred.

We begin our consideration by noting that Section 9 on its face provides a "plain, speedy and efficient remedy" within the meaning of § 1341. This was not questioned by the District Court. At issue is the legal effect of Appellee's failure to utilize the Section 9 remedy. The District Court concluded that Appellee was reasonable in unilaterally determining that it was not "doing business" in Michigan and hence that it was not subject to the State franchise fee and further concluding that the State remedies, which are open to "[a]ny corporation subject to the provisions of this act," were unavailable. The District Court noted that since Appellee's failure to exhaust State remedies was reasonable, action in federal court was not barred.

To permit the District Court's holding to stand would allow foreign corporations to determine if a State remedy is "plain, speedy and efficient" by virtue of their decision whether to use it. Such a result would be totally at variance with the purpose of the Tax Injunction Act.

Mr. Justice Fortas, writing for the Court in *Department of Employment v. United States,* 385 U.S. 355, 358 n. 7, 87

---

4. 319 U.S. at 299, 63 S.Ct. at 1073.

S.Ct. 464, 17 L.Ed.2d 414 (1966), found "convincing evidence of legislative purpose" in the committee reports recommending adoption of the bill which became the Tax Injunction Act. The committee reports reflect two main purposes and two secondary purposes underlying § 1341. First, the Act is aimed at eliminating the discriminatory effect on State citizens, who are limited to State agencies and courts in settling their State tax disputes, of allowing foreign corporations to take State tax disputes into federal courts as well as allowing them access to State courts:

> If those to whom the federal courts are open may secure injunctive relief against the collection of taxes, the highly unfair picture is presented of the citizen of the State being required to pay first and then litigate, while those privileged to sue in the federal courts need only pay what they choose and withhold the balance during the period of litigation.[5]

The Act's second main purpose is to eliminate disruption of State financing efforts by foreign corporations. The Senate Report noted it was then common practice

> * * * for foreign corporations doing business in such States to withhold from them and their governmental subdivisions taxes in such vast amounts and for such long periods of time as to seriously disrupt State and county finances. The pressing needs of these States for this tax money is so great that in many instances they have been compelled to compromise these suits, as a result of which substantial portions of the tax have been lost to the States without a judicial examination into the real merits of the controversy.[6]

Insertions in the Congressional Record which accompany the report of discussion of this measure on the floor of the Senate indicate two secondary reasons behind § 1341.[7] The first is a concern that the added expense of litigating in the federal courts might make it financially unsound for the State or a local taxing authority to contest a wealthy corporation's tax liability. The other is to relieve congestion in the federal courts by letting State courts settle State controversies.

In evaluating Section 9 the District Court did not discuss the purposes of § 1341. In concluding that Section 9 did not provide a "plain, speedy and efficient remedy" the District Court cited only a passage from *Hillsborough v. Cromwell,* 326 U.S. 620, 628, 66 S.Ct. 445, 90 L.Ed. 358 (1946). The following excerpt from the opinion of the Court, delivered by Mr. Justice Douglas, was the passage upon which the District Court relied:

> In the present case it appears that respondent's opportunity to appeal to the State Board of Tax Appeals had expired even before the District Court ruled on the motion to dismiss. And it is not clear that today respondent has open any adequate remedy in the New Jersey courts for challenging the assessments on local law grounds. [footnotes omitted][8]

This language would seem to support the District Court's conclusion. However, reference to the quotation's context and to the purposes of the Tax Injunction Act as reviewed above leaves little doubt that the passage is not sufficient support to warrant a reading of § 1341 which does violence to the purposes underlying that statute.

The taxpayer in *Cromwell* sought and received declaratory relief in District Court from a constitutionally impermissible New Jersey personal property tax assessment. New Jersey courts had interpreted the then existing New Jersey statutory scheme as restricting the taxpayer's remedy to proceedings against

---

**5.** S.Rep.No.1035, 75th Cong., 1st Sess., 1–2 (1937).

**6.** *Id.* at 2.

**7.** 81 Cong.Rec. 1416–1417 (1937).

**8.** 326 U.S. at 628, 66 S.Ct. at 450.

other members of her class for the purpose of having their taxes increased. No method for seeking reduction of her assessment was provided. In the first part of a two-part opinion the Court noted the long-standing federal policy of nonintervention in State taxation disputes embodied in the Tax Injunction Act. The New Jersey remedy consisted of an appeal of right to the State Board of Tax Appeals from a disputed tax assessment and if the taxpayer was dissatisfied a writ of certiorari could be sought from the New Jersey Supreme Court. The *Cromwell* Court noted that the State Board of Tax Appeals had no right to pass on constitutional questions and that allowance of a writ of certiorari was discretionary with the New Jersey Supreme Court. Since the taxpayer did not have a state remedy of right which would allow her to challenge the constitutional infirmities of the New Jersey statutory scheme, the Court concluded that the Tax Injunction Act did not deprive the federal courts of jurisdiction in the case.

In the second part of the opinion, the *Cromwell* Court concluded that the District Court and the Court of Appeals acted properly in resolving the case on State grounds. The lower courts ruled for the taxpayer since the assessment at issue had not been made in conformity with a State statute requiring prior notice to the taxpayer and a hearing. The taxing authority argued that the taxpayer had a State remedy in the form of an appeal to the Board of Tax Appeals which adequately protected her rights under the State procedural statute and that the federal courts should have required her to pursue such remedy.

The Supreme Court noted that the taxpayer's right to appeal to the State Board of Tax Appeals had expired during the pendency of proceedings in District Court. The Court went on to conclude that "it is not clear that today respondent has open any adequate remedy in the New Jersey courts for challenging the assessments on local law grounds." 326 U.S. at 628, 66 S.Ct. at 450. As noted in the first part of the *Cromwell* opinion, appeal to the New Jersey appellate courts from a decision of the State Board of Tax Appeals was within the discretion of the appellate court. Thus, even if the time for taking an appeal to the Board had not expired, entry into the State court system was not assured.

We believe that *Cromwell* is limited to those cases where entry to the State court system is not assured. The District Court erred in taking a passage in *Cromwell* out of context and giving it a reading which would render the Tax Injunction Act nugatory at a corporation's option. A number of courts have squarely faced the issue of whether a "plain, speedy and efficient remedy" which has been allowed to lapse satisfies the Tax Injunction Act. These courts have unanimously concluded that failure to utilize a remedy does not render that remedy insufficient under § 1341. *Lung v. O'Cheskey,* 358 F.Supp. 928 (D.N.M.), aff'd 414 U.S. 802, 94 S.Ct. 159, 38 L.Ed.2d 39 (1973); *Ford Motor Credit Co. v. Louisiana State Tax Commission,* 440 F.2d 675, 677 (5th Cir. 1971); *Henry v. Metropolitan Dade County,* 329 F.2d 780, 781 (5th Cir. 1964); *Klotz v. Consolidated Edison Co. of New York, Inc.,* 386 F.Supp. 577, 587 (S.D.N.Y.); *Horn v. O'Cheskey,* 378 F.Supp. 1280, 1285 (D.N.M.1974).

The District Court's position would allow foreign corporations to let the time for pursuing a State remedy run and then by virtue of diversity of citizenship to avail themselves of federal adjudication of their State tax disputes. The delays in payment of taxes entailed by such an approach could severely strain a State's fiscal structure. The very procedural time limits which State legislatures incorporated into their tax dispute remedies to prevent lengthy delay would become the vehicle for effecting delay.

Appellee argues that whether it was "doing business" in Michigan is a federal interstate commerce question and as such should be resolved in federal court. While there may be interstate commerce

ramifications in any dispute between a State taxing authority and a foreign corporation, Congress in § 1341 has clearly expressed a preference for State court resolution of such disputes when the State affords a "plain, speedy and efficient remedy." It is difficult to comprehend how, in light of the clear import of § 1341, a foreign corporation could in good faith fail to utilize a State remedy which does not require advance payment of the assessed tax. The instant situation is particularly troublesome in light of Appellee's utilization of a portion of the Section 9 remedy before allowing the time for utilizing the remainder of the remedy to run.

Appellee had begun to avail itself of a multi-faceted remedy which included access to a State administrative board with tax expertise and, failing satisfaction there, access to the State appellate courts, and the opportunity to appeal to the United States Supreme Court pursuant to 28 U.S.C. § 1257. However, having initiated this remedy and having proceeded through two steps, when Appellee arrived at the last day upon which an appeal to the State administrative board could be filed, Appellee chose instead to initiate a new action in federal court. It is just this sort of forum shopping and the consequent lengthy delay in payment of assessed State taxes that Congress sought to prevent with § 1341. We thus conclude that Section 9 afforded Appellee a "plain, speedy and efficient remedy" within the meaning of § 1341.

■ As an alternative ground for our holding that § 1341 deprived the District Court of jurisdiction in this case, we conclude that Section 10, which is still available to Appellee, affords a "plain, speedy and efficient remedy" for challenging Appellee's franchise fee liability. Section 10 provides for the payment of the disputed assessment and application to the Department of Treasury for a refund. If the refund request is denied, a corporation is afforded the statutory right to either file a claim for refund with the Court of Claims or as in Section 9 to appeal to the Corporation Tax Appeals Board and then to the State appellate courts.

■ The Supreme Court in *Matthews v. Rodgers,* 284 U.S. 521, 526, 52 S.Ct. 217, 76 L.Ed. 447 (1932), noted that if a State provided procedures for paying a disputed State tax and filing for a refund, this was a remedy sufficient to preclude federal court intervention. The Tax Injunction Act of 1937 embodied the nonintervention principle espoused in *Matthews.* A State remedy which provides for payment of a State tax and suit for refund is a remedy which satisfies § 1341. *Helmsley v. Detroit,* 320 F.2d 476, 480 (6th Cir. 1963); *Non-Resident Taxpayers Association v. Municipality of Philadelphia,* 478 F.2d 456, 458 (3d Cir. 1973); *Houston v. Standard-Triumph Motor Co.,* 347 F.2d 194, 199 (5th Cir. 1965).

The District Court concluded that the Section 10 remedy did not satisfy § 1341 because payment of the assessment pursuant to Section 10 in order to utilize that remedy would in the Court of Claims and the State appellate courts be considered a "voluntary" and hence unrecoverable payment. The District Court cited *City of Detroit v. Martin,* 34 Mich. 170 (1876), for this proposition, stating that "[i]n Michigan, the payment of an alleged illegal tax under protest is voluntary payment and not recoverable." *Aluminum Company of America v. Department of Treasury,* 384 F.Supp. 1143, 1147 (E.D.Mich.1974). If payment of assessed franchise fees by a corporation to avail itself of the Section 10 remedy is voluntary payment and hence unrecoverable under Michigan law, Section 10 would be meaningless surplusage providing a hollow remedy. It is a cardinal rule of statutory construction that

> [t]here is a presumption against a construction which would render a statute ineffective or inefficient, or which would cause grave public injury or even inconvenience.[9]

---

9. *Bird v. United States,* 187 U.S. 118, 124, 23 S.Ct. 42, 44, 47 L.Ed. 100 (1902).

*See also United States v. Powers,* 307 U.S. 214, 217, 59 S.Ct. 805, 83 L.Ed. 1245 (1939); *United States v. Shaver,* 506 F.2d 699 (4th Cir. 1974); *National Petroleum Refiners Ass'n v. FTC,* 157 U.S. App.D.C. 83, 482 F.2d 672, 689 (1973); *United States v. Blasius,* 397 F.2d 203, 207 n. 9 (2nd Cir. 1968). We believe it is the better view to consider Section 10 an exception to the Michigan common law rule of nonrecoverability of voluntary tax payments. For purposes of disputing franchise fee liability Sections 9 and 10 displaced the general rules for contesting tax liability embodied in the Michigan common law which required a tax payment to be made under duress or legal compulsion before it would be recoverable.

Mich.Comp.Laws Ann. § 211.53 affords taxpayers contesting their property tax assessment a remedy similar to that afforded by Section 10 to taxpayers contesting franchise fee liability. Section 211.53 has been held by this Court, without reference to *Martin,* to be a "plain, speedy and efficient remedy" within the meaning of § 1341. *Helmsley v. City of Detroit,* 320 F.2d 476, 479 (6th Cir. 1963).

The District Court's second reason for concluding that the Section 10 remedy did not satisfy § 1341 was that Section 10 does not provide for recovery of interest from the date of payment of the contested assessment. Those corporations choosing to file for a refund with the Court of Claims would if successful receive interest from the date of the Court of Claims judgment. Mich.Comp. Laws Ann. 600.6455. The District Court concluded, relying on *United States v. Livingston,* 179 F.Supp. 9 (E.D.S.C.1959), aff'd 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719, *reh. denied,* 364 U.S. 855, 81 S.Ct. 35, 5 L.Ed.2d 79 (1960), that a remedy is not "plain, speedy and efficient" unless it includes allowance for interest to a successful litigant from the date of payment of the disputed tax. The *Livingston* Court cited *Hopkins v. Southern California Telephone Co.,* 275 U.S. 393, 48 S.Ct. 180, 72 L.Ed. 329 (1928), and a number of lower federal court decisions, none of which were decisions of this circuit, in support of the proposition. In *Hopkins,* a State property tax case, a series of factors including failure to provide for interest were viewed by the Court as requiring a conclusion that no adequate State remedy existed. The most prominent factor in *Hopkins* was that the taxpayer was a lessee and State courts had indicated that the State remedy was only open to the actual owner of the assessed property. The *Hopkins* Court concluded that "[c]onsidering all the circumstances" a clear and adequate remedy was unavailable. Mr. Justice Fortas delivered the opinion of the Court in *Department of Employment v. United States,* 385 U.S. 355, 358, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966), and stated,

> we need not decide whether omission to provide interest on a successful refund application renders the state remedy here an inadequate one within the meaning of § 1341.

Thus, many years after *Hopkins* the Supreme Court considered the effect of no interest provision in a State remedy for purposes of § 1341 to be an open question.

As for Section 10, the taxpayer is presented with alternative routes to pursue. The Court of Claims route with its limited interest provision can be avoided if the taxpayer chooses to appeal the Department of Treasury's refund decision to the Corporation Tax Appeals Board and then, if necessary, to the State appellate courts. The appeals board recently awarded interest from date of payment of a disputed assessment in a franchise fee case. *Mueller Brass Co. v. Treasury,* Corporation Tax Appeal Board Docket No. 74-1, decided October 9, 1974. Michigan appellate courts must conform their awards to the dictates of the Michigan Revised Judicature Act, which provides that interest on judgments be calculated from the date of filing the complaint. Mich.Comp. Laws Ann. 600.6013. We have no reason

to believe that this language would not be construed to mean from date of payment of the assessed franchise fee in a case such as this which originated as a refund action. Furthermore, the Michigan Supreme Court has ruled that where a statute has no interest provision a court may award interest if such an award is consistent with the broad purpose of the statute. *Wilson v. Doehler-Jarvis,* 358 Mich. 510, 100 N.W.2d 226 (1960).

The Section 10 remedy conforms to the requirements enunciated by Mr. Chief Justice Stone in his opinion on behalf of the Court in *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300–301, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943):

The considerations which persuaded federal courts of equity not to grant relief against an allegedly unlawful state tax, and which led to the enactment of the Act of August 21, 1937, are persuasive that relief by way of declaratory judgment may likewise be withheld in the sound discretion of the court. With due regard for these considerations, it is the court's duty to withhold such relief when, as in the present case, it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this Court. This affords an adequate remedy to the taxpayer, and at the same time leaves undisturbed the state's administration of its taxes.

In light of our conclusion that § 1341 bars District Court jurisdiction over this case, we need not consider whether the District Court's refusal to take steps to convene a three-judge court was proper.

We reverse the judgment of the District Court and remand with instructions that Appellants' Motion to Dismiss be granted.