Kenneth K. **KISTNER** and Carmen W. Kistner, his wife, Plaintiffs,

v.

William G. **MILLIKEN**, Governor, State of Michigan, et al., Defendants.

Civ. A. No. 6–72428.

United States District Court, E. D. Michigan, S. D.

June 8, 1977.

1002

Robert P. Dank, Dank, Kaser & Smith, Mount Clemens, Mich., for plaintiffs.

Lawrence W. Morgan, Asst. Atty. Gen., Lansing, Mich., for defendants Milliken, Green and Clark.

Donald F. Slavin, Oakland County Civ. Counsel, Pontiac, Mich., for defendants Perinoff, Dohany, Stephens and Kuhn.

Milton Spokojny, Asst. City Atty., Southfield, Mich., for defendants Gronkowski and Beren.

Wolfgang Hoppe, Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendants Hassel and Rutherford.

Gene S. Davis, Cross, Wrock, Miller & Vieson, Bloomfield Hills, Mich., for defendant Brown.

Walter R. Denison, Denison, Porter & Bartush, Bloomfield Hills, Mich., for defendant Henderson.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Plaintiffs, Kenneth and Carmen Kistner, are Michigan citizens and resident property owners in the city of Southfield, Oakland County. The defendants are the governor, state treasurer, chairman of the State Tax Commission, and various public officials of Oakland County and the city of Southfield. The complaint charges that defendants breached their statutory duties under state law and violated the plaintiffs' rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment by permitting the levying of ad valorem property taxes in Macomb and unspecified other Michigan counties based on assessments substantially below the state equalized value, while taxes in Oakland County were levied at a rate based on the full state equalized value. It seeks a declaration that the action of the defendants, in assessing, levying, and collecting the taxes, breached the plaintiffs' Fourteenth Amendment rights, and it also seeks an injunction against the retention of portions of the taxes collected. Jurisdiction is claimed under the civil rights act, 42 U.S.C. § 1983; 28 U.S.C. § 1343.

The defendants have moved to dismiss on the grounds that the Tax Injunction Act, 28 U.S.C. § 1341, deprives this court of jurisdiction and that there are no alternative jurisdictional grounds.

Section 1341 provides that:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such state."

■ This federal act implements important principles of comity. It expresses the federal government's "scrupulous regard for the rightful independence of state governments." *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943). It recognizes the importance of protecting the states' periodic collection of tax revenues from disruptive litigation in federal courts, which the states are powerless to control. It also respects the traditional reluctance of federal courts to intervene in the complexities of state tax administration. *See generally, Great Lakes, supra; Perez v. Ledesma,* 401 U.S. 82, 127 n. 17, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971). (Brennan, J., concurring in part and dissenting in part).[1] The

---

1. "The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administrators might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts. . . . These considerations make clear that the underlying policy of the anti-tax-injunction statute, 28 U.S.C. § 1341, . . . bars all anticipatory federal adjudication in this field, not merely federal injunctions."

Act is a "broad jurisdictional barrier," *Moe v. Confederated Salish & Kootenai Tribes,* 425 U.S. 463, 470, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976).[2] It bars even claims that the state tax is illegal or unconstitutional.[3] *Tully v. Griffin, Inc.,* 429 U.S. 68, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976).

■ The court therefore concludes that insofar as the claim in this case may be construed as an action for a declaration that the assessing, levying, and collection of the taxes involved violate the Constitution, it is barred directly by the terms of the Tax Injunction Act if plaintiffs have a "plain, speedy, and efficient remedy" at state law.

## I.

Plaintiffs argue vigorously that section 1341 does not bar suits "to enjoin the retention" of sums alleged to have been collected unconstitutionally.[4] They rely upon the literal language of the Act, which refers only to suits to "enjoin, suspend or restrain the *assessment, levy or collection* " (emphasis added) of a state tax. They cite *Hargrave v. McKinney,* 413 F.2d 320 (5th Cir. 1969); *Georgia Pacific Corp. v. Mendocino,* 340 F.Supp. 1061 (N.D. Cal.1972), aff'd *sub nom. International Paper Co. v. Siskiyou,* 515 F.2d 285 (9th Cir. 1974); *Southland Mall, Inc. v. Garner,* 293 F.Supp. 1370 (W.D. Tenn.

1968); *Central Steel & Wire Co. v. Detroit,* 99 F.Supp. 639 (E.D. Mich. 1951).[5]

The Fifth Circuit case cited above, *Hargrave v. McKinney,* was a suit to compel the collection of a state tax.[6] The district court decisions cited by plaintiffs relied upon the literal language of the Act, as do the plaintiffs in this case, to establish a distinction between actions for equitable relief and refund actions. In each case, the court found that it had jurisdiction over a refund action, despite the Tax Injunction Act.

Other courts, however, have dismissed refund actions on the basis of the Tax Injunction Act. *See Bland v. McHann,* 463 F.2d 21 (5th Cir. 1972); *Kiker v. Hefner,* 409 F.2d 1067 (5th Cir. 1969); *Gray v. Morgan,* 371 F.2d 172 (7th Cir. 1966); *National Gas Pipeline Co. v. Sergeant,* 337 F.Supp. 88 (D. Kan. 1972).

In *Bland v. McHann, supra,* the Fifth Circuit squarely faced the question and concluded that federal actions for the refund of state taxes are barred, although not by the literal language of the Tax Injunction Act. The court relied upon a case decided before the enactment of the Tax Injunction Act. *First National Bank v. Board of County Commissioners,* 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924), affirmed the

---

2. Section 1341 does not bar suits brought by the United States to protect itself or its instrumentalities from unconstitutional state taxation. *Department of Employment v. United States,* 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 1414 (1966). Nor does it bar suit by an Indian tribe to litigate a matter arising under the Constitution, laws or treaties which could have been brought by the United States suing as the tribe's trustee. *Moe, supra.*

3. The distinction between "property rights" and "personal liberties" in Fourteenth Amendment claims was laid to rest in *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). Defendants in this case have attempted to resurrect that distinction, arguing that a tax claim, being a mere "property" claim, is not cognizable under section 1983. It is well settled now that unconstitutional dep-

rivations of property, by taxation or otherwise, may be redressed by the civil rights act. However, even actions under the civil rights acts are subject to the prohibition of the Tax Injunction Act. See *Bland v. McHann,* 463 F.2d 21, 24–25 (5th Cir. 1972).

4. Plaintiffs do not attempt to distinguish their request for relief from the more common refund action, and this court perceives no substantive distinction between an action "to enjoin retention" of taxes and an action for the refund of taxes.

5. See also *Rico Argentine Mining Co. v. Board of County Commissioners,* 215 F.Supp. 208 (D. Colo. 1963).

6. See note 7, *infra.*

district court's decision to abstain from an action to recover state taxes based upon due process and equal protection arguments. The Fifth Circuit concluded that there is

> "no reason to bifurcate the state remedy. Section 1341 compels the taxpayers to seek anticipatory relief through a plain, speedy and efficient state remedy. An ancillary claim for a refund should be joined with it." 463 F.2d at 27.

*Accord, Mandel v. Hutchinson,* 336 F.Supp. 772, 779–80 (C.D. Cal. 1971), *aff'd,* 494 F.2d 364 (9th Cir. 1974).

■ The soundness of the Fifth Circuit's conclusion cannot be doubted. The principles of abstention that were developed before enactment of the Tax Injunction Act, *see, e.g., Matthews v. Rodgers,* 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932), and which bar suits for declaratory relief as well as equitable actions, *see Great Lakes Dredge & Dock Co. v. Huffman, supra,* are equally applicable to refund actions. The reasons for comity are no less forceful merely because the *form* of the action is in the nature of a claim for damages. The *subject* of the action remains a state tax dispute between a taxpayer and the state.

Insofar as the claim in this case may be construed merely as a claim for refund, the court concludes, as did the Fifth Circuit,[7] that "it is the duty of federal courts, in actions for the refund of state taxes, to defer to state administrative and judicial remedies where the state remedy is 'plain, speedy and efficient.'" *Bland, supra,* 463 F.2d at 27. This conclusion is compelled by principles of discretionary abstention which were recognized before the Act was passed

and which were strengthened by its adoption.

Being an action for monetary compensation, a refund action does not pose the same threat to the state's fiscal integrity as does an action for anticipatory relief. In an action for refund, the court is not bound by the jurisdictional bar of the Tax Injunction Act, but by the judicial doctrine of abstention, and there may be cases in which a court should exercise its discretion to accept jurisdiction of a refund action.

## II.

It must now be determined whether Michigan offers a "plain, speedy, and efficient" remedy for the taxpayers' complaint in this case.

■ The state remedy does not have to be "the best remedy available or even equal to or better than the remedy which might be available in the federal courts." *Bland, supra,* 463 F.2d at 29. A great variety of state taxpayer remedies have been examined by the federal courts and have been found adequate. *See, e. g., Tully v. Griffin, Inc.,* 429 U.S. 68, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976); *Miller v. Bauer,* 517 F.2d 27 (7th Cir. 1975); *Mandel v. Hutchinson,* 494 F.2d 364 (9th Cir. 1974); *Bussie v. Long,* 383 F.2d 766, 769–70 (5th Cir. 1967) (Bell, J.).[8]

If the asserted federal right will not be lost by resort to the state remedy, that remedy is adequate. *Tully, supra,* 429 U.S. at 73, 97 S.Ct. 219. *Cf. Juidice v. Vail,* —— U.S. ——, ——, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) ("opportunity to fairly pursue" the constitutional claim in pending state

---

**7.** The court in *Bland* distinguished its earlier holding in *Hargrave v. McKinney,* 413 F.2d 320 (1969), as an action to compel the collection of a state tax. 463 F.2d at 27 n. 21. In *Hargrave,* the court had reasoned that the Tax Injunction Act's intention to "protect the integrity of the state treasury" was not frustrated by a federal suit to compel the collection of state tax revenues.

**8.** *But cf. Garrett v. Bamford,* 538 F.2d 63 (3d Cir. 1976) (no adequate equitable or administrative remedy in Pennsylvania for claim of systematic and intentional class-based racial discrimination in tax assessments). The application of the Tax Injunction Act in such cases was noted in *Comment, Racial Discrimination and the Tax Injunction Act: Garrett v. Bamford,* 90 Harv.L.Rev. 616 (1977).

proceeding—*Younger* abstention); *Trainor v. Hernandez,* —— U.S. ——, ——, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).

Michigan provides a comprehensive scheme for the administrative and judicial review of challenges to tax assessments and levies. By enactment of 1973 P.A. 186, effective July 1, 1974, a new Tax Tribunal was created. This quasi-judicial entity, which consists of five appointed experts, is intended eventually to assume jurisdiction of "*all* state tax adjudicatory proceedings." [9] Presently, the Tribunal has "exclusive and original jurisdiction" of: (1) appeals from any final decision, ruling, determination, or order of any agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws," M.C.L.A. § 205.-731(a); and (2) any direct "proceeding for refund or redetermination of a tax under the property tax laws," M.C.L.A. § 205.-731(b). Proceedings before the Tribunal are considered *de novo.* M.C.L.A. § 205.-735(1). All the governmental units taxing the property which is the subject of the contested assessment and all the taxpayer's claims arising from the allegedly unlawful assessments may be joined in the same suit. M.C.L.A. § 205.737(4). If the state or any local governmental unit or officer has a material monetary interest in the suit, the Tribunal is empowered to permit the intervention or impleader of the interested governmental party upon a showing that its interests are not likely to be adequately presented by the existing parties to the proceeding. M.C.L.A. § 205.744. Appeals from final orders and decisions by the Tribunal may be had as of right to the Michigan court of appeals, M.C.L.A. § 205.753, subject to the constitutional restriction that such appeals from "any decision relating to valuation or allocation" may lie only in cases alleging "fraud, error of law or the adoption of wrong principles." Mich.Const. art. 6, § 28.

The taxpayer's remedies before the Tax Tribunal are to be distinguished from the remedies provided for equalization disputes. In intracounty equalization disputes, the supervisor of the aggrieved taxing unit may appeal the equalization decision of the local board of commissioners to the Tax Tribunal. M.C.L.A. § 211.34(2). If the equalization dispute is intercounty, then it must be brought before the State Tax Commission, *Emmet County v. State Tax Commission,* 397 Mich. 550, 244 N.W.2d 909 (1976), which is charged with the duty to equalize taxes between counties, M.C.L.A. § 209.4.[10] The State Tax Commission is the final arbiter of value in intercounty equalization disputes. *Pittsfield Twsp. v. Washtenaw County Board of Supervisors,* 341 Mich. 388, 404, 67 N.W.2d 165 (1954).

Members of the State Tax Commission, "all assessing officers of the state and all other public officers" have a statutory duty to provide for the equalization of the state property tax, and breach of this duty is a misdemeanor. M.C.L.A. § 209.104. If an official or governmental unit fails to perform its duty to lawfully assess and equalize the property tax, a petition for writ of mandamus is an appropriate civil remedy. *Pittsfield Twsp., supra; Board of Education of Alpena Public Schools v. Presque Isle Twsp. Board,* 24 Mich.App. 48, 59, 179 N.W.2d 691 (1970). See M.C.L.A. § 600.-4401; GCR 714.

The plaintiffs argue that their remedies before the Michigan Tax Tribunal are inadequate in this case because the discriminatory acts alleged did not occur until after the running of the time allotted for protest and appeal. The source of the timeliness problem is M.C.L.A. § 205.735, which re-

---

9. Park, *Tax Tribunal Assumes Jurisdiction Over Property Tax Disputes,* 53 Mich.S.B J. 580, 581 (Sept. 1974) (emphasis added).

10. The overall responsibility for statewide equalization was transferred in 1965 from the State Board of Equalization to the State Tax Commission. M.C.L.A. § 16.186.

quires that "[i]n the case of an assessment appeal, the valuation of the same property must be protested before the board of review," and that a petition for review by the Tribunal must be filed "within 30 days after the final decision, ruling, determination, or order which [the petitioner] seeks to review or within 30 days after the receipt of a bill for a tax he seeks to contest." The plaintiffs claim that M.C.L.A. § 205.735 required them to protest their own assessments before their local board of review during the month of March, 1975, see M.C.L.A. § 211.30, and to appeal to the Tax Tribunal within 30 days of the local board's decision. They argue that such a requirement precludes review by the Tax Tribunal entirely, because the discriminatory acts did not occur until the taxes were actually levied in June and December, 1975.

▮ The plaintiffs have misconceived the requirements of the Michigan Tax Tribunal Act. Their complaint is of discrimination between counties in the levying and collection of their respective property taxes. Accordingly, the cause of action, if any, arose at the time that the alleged discriminatory act or acts occurred. The cause of action did not arise, as plaintiffs have assumed, at the time their own property was assessed. The plaintiffs do not dispute the assessment of their property. The applicable jurisdictional provision is not M.C.L.A. § 205.731(a) (proceedings for review of final decisions by local boards of review), but subsection (b) (proceedings for refund or redetermination of a tax)—*i. e.,* the original jurisdiction of the Tax Tribunal, rather than that body's appellate jurisdiction. Plaintiffs had 30 days from their receipt of a bill for the contested tax within which to invoke the Tribunal's jurisdiction, M.C.L.A. § 205.735(2).

▮ Without reaching the merits of plaintiffs' claim, the court concludes that a "plain, speedy, and efficient" remedy was open to them in the Michigan Tax Tribunal. *Cf. Detroit Edison Co. v. East China Twsp.,* 378 F.2d 225, 229 (6th Cir. 1967) (refund action in state circuit court, former M.C.L.A. § 211.53, now available before the Tax Tribunal, held adequate).[11] This remedy did not become inadequate because plaintiffs misconceived it and failed to file a timely petition. *Aluminum Co. of America v. Department of Treasury,* 522 F.2d 1120 (6th Cir. 1975).

Nor are any peculiarities apparent in this case which persuade the court that it should exercise its discretion, which it has under the common law abstention doctrine, to accept jurisdiction.

Accordingly, the complaint is dismissed.

---

11. To be adequate, the state remedy must provide a forum for the litigation of the constitutional issue that the plaintiffs seek to present. *Moe, supra; Aluminum Co. of America v. Department of Treasury,* 522 F.2d 1120 (6th Cir. 1975). Under former M.C.L.A. § 211.53 (refund action), Michigan taxpayers could bring constitutional challenges to the validity of a state tax. There is no reason to doubt that they may still do so before the Tax Tribunal.

Because "[t]he determination of the constitutionality of a tax is clearly a matter of judicial review and cannot be decided exclusively by an administrative agency," *Xerox Corp. v. Detroit,* 64 Mich.App. 159, 235 N.W.2d 173 (1975), an appeal would lie as of right to the Michigan court of appeals, M.C.L.A. § 205.753.