**DOMINION NATIONAL BANK, Bank of Virginia, and Charter Federal Savings and Loan Association, Plaintiffs-Appellees,**

v.

**Martha B. OLSEN, Tennessee Commissioner of Revenue, and William M. Leech, Jr., Attorney General of the State of Tennessee, Defendants-Appellants.**

Supreme Court of Tennessee,
at Nashville.

May 23, 1983.

Robert L. Crossley, Ralph E. Tallant, Jr., Knoxville, for plaintiffs-appellees.

Charles L. Lewis, Gregory L. Nelson, Asst. Attys. Gen., Nashville, for defendants-appellants.

OPINION

HARBISON, Justice.

In this case three Virginia banks have filed an action for declaratory and injunctive relief, contending that a 1982 amendment to the Tennessee domestic income tax statutes discriminates against interstate commerce. The statute in question, Tennessee Public Acts 1982, Chapter 652 amended T.C.A. § 67–2601(b) so as to make taxable to Tennessee residents interest income on long-term certificates of deposit[1]

1. *I.e.*, certificates maturing in more than six    months.

in out-of-state banks. Previously all interest on certificates of deposit had been exempted, and after the 1982 statute, interest on such certificates of domesticated banks continued to be non-taxable.

Plaintiffs in the action, appellees here, are not subject to the tax, nor are they required to pay the tax or file a return on behalf of their depositors. None of them is qualified to do business or is in fact doing business within the State of Tennessee. While there is evidence that a number of Tennessee citizens have funds on deposit with plaintiffs, no taxpayer has joined in the action as plaintiff, nor has any state revenue official taken any action whatever against any of the plaintiffs, their officers, agents or employees, insofar as the record discloses.

The Commissioner and the Attorney General challenge the standing of appellees to maintain such a declaratory and injunctive action, since the tax in question is purely a domestic tax levied on Tennessee citizens. The Chancellor held, however, that appellees had standing to maintain the action, and he declared the 1982 amendment unconstitutional.

We do not reach the merits of the constitutional issue, because we believe that the motion of appellants to dismiss the action for lack of standing was well taken and should be sustained. Although appellees categorize the principles upon which appellants challenge their standing as "bare canards," those principles are rather fundamental with respect to revenue litigation. Appellees admit in their briefs that their being permitted to maintain this suit presents "a case of extraordinary novelty . . . ." They cite very little authority for their contention that a non-citizen, non-taxpayer can maintain an action simply because its customers (or, in this case, its depositor-creditors) are subject to the tax.

Appellees admit that not every person or corporation disliking or dissatisfied with a state revenue measure may attack its validity. With respect to taxpayers—that is, persons who are subject to the tax—it is clear that T.C.A. §§ 67–2303 to –2314 provide an exclusive remedy (other than an administrative remedy set forth in T.C.A. § 67–2301, not applicable here). That remedy is payment of the tax under protest and suit for recovery.

While there were some early cases in this state permitting declaratory judgments to challenge liability for taxes,[2] these were disapproved and the statutory remedy held exclusive in *American Can Co. v. McCanless,* 183 Tenn. 491, 193 S.W.2d 86 (1946). In most of the earlier cases, no issue had been raised by the State as to standing or payment under protest. It was raised in the case just cited and is raised here.

Further, T.C.A. § 67–2311 provides that the courts of the state do not have jurisdiction to issue writs to prevent the collection of claimed revenue. The statutes state that

"... in all cases in which, for any reason, any person shall claim that the tax so collected was wrongfully or illegally collected, the remedy for said party shall be as above provided, and in no other manner."[3]

Appellees recognize the force of these statutes but insist that the statutes apply only to taxpayers. Since appellees admittedly are not in that category, and are not subject to the state taxing or regulatory authority, they insist that they have standing apart from the statutes to challenge the constitutionality of the revenue measure here involved.

This is, indeed, a rather extraordinary proposition. For a foreign corporation or

---

**2.** Those cases, however, unlike the instant case, involved determination of whether the plaintiff was or was not subject to or liable for a particular tax. None involved an abstract attack upon a tax measure by a third party not threatened with levy of the tax or even alleged to be subject to the taxing power of the state. *Texas Co. v. Bryant,* 178 Tenn. 1, 152 S.W.2d 627

(1941), *reh. denied,* 178 Tenn. 680, 163 S.W.2d 71 (1942); *General Securities Co. v. Williams,* 161 Tenn. 50, 29 S.W.2d 662 (1930).

**3.** This statute is similar to the federal anti-injunction statute, 26 U.S.C. § 7421(a), prohibiting injunctions as to assessment and collection of federal taxes.

business entity to challenge the domestic, internal taxation of state citizens, simply because they do business with that foreign entity and its business with them may be adversely affected, potentially opens state revenue laws to very broad-based attacks. If these appellees have standing to challenge the Tennessee tax, then there is no reason why any other bank in the United States having Tennessee depositors would not likewise have standing. The borders of Tennessee touch eight other states.[4] Citizens of this state bank and transact other business in each of those states, as well as in New York, Dallas, and numerous other financial centers in the nation. Presumably any banking institution paying interest to a Tennessee depositor would have standing to challenge this revenue measure, if these appellees may do so.

The Tennessee tax involved here is popularly known as the Hall Income Tax. T.C.A. §§ 67–2601 to –2635. It is a tax on interest income from stocks and bonds. It is levied only upon residents of the state and upon business organizations receiving interest income in the state. It provides:

"Any person who has a legal domicile in Tennessee shall be subject to the tax hereby imposed; every person who maintains a place of residence in Tennessee for more than six (6) months in the tax year shall be subject to the tax hereby imposed, regardless of what place such person may claim as a legal domicile." T.C.A. § 67–2601.

The banks in question are not required either to pay the tax, to file an information return, or to take any other action whatever with respect thereto. As related to this case, the tax is levied upon individuals receiving interest income, with certain exceptions not material here, and appellees have no connection whatever with the payment of the tax, its collection or enforcement.

Nevertheless, it is their insistence that they are adversely affected by the existence of the tax because Tennessee depositors may remove their funds from out-of-state banks and deposit them in domestic banks in order to avoid payment of the tax. There is evidence that a few depositors have done so, but, as stated, none of the thousands of citizens having funds on deposit with appellees or in other out-of-state banks has joined in this suit or challenged the levy of the tax in any manner.[5]

The principal Tennessee authorities cited by appellees for their position in this case are *Lynn v. Polk,* 76 Tenn. 121 (1881), and *Stockton v. Morris & Pierce,* 172 Tenn. 197, 110 S.W.2d 480 (1937). Neither of these cases is in point with respect to the issues involved here. In both cases the complaining parties were citizens of Tennessee. In the first, *Lynn v. Polk,* it was held that citizens of the state might enjoin state officials from funding public indebtedness under an unconstitutional statute. In the second, persons from whom property had been seized as contraband were held to have standing to enjoin the seizure under an alleged invalid statute. Neither of the cases involved the enjoining of the collection of state revenues.

Also cited by appellees but not pertinent here is *Austin Company v. Woods,* 620 S.W.2d 73 (Tenn.1981). There the tax in question had actually been paid under protest. Suit for refund was brought both by the party assessed and by a company which was contractually obligated to pay the tax.

Appellees place their principal reliance upon the decision of the Supreme Court of the United States in *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977). In that case non-taxpaying entities were per-

---

4. At least one of those states taxes interest paid to its citizens from Tennessee banks at a rate five times greater than interest on in-state deposits. *See Madden v. Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940).

5. The three banks bringing this action asserted that there were a total of 6,119 certificates of

deposit issued by them to Tennessee residents, interest on which might be subject to the tax. Eleven individuals gave affidavits that they had withdrawn or had not renewed their deposits or had not purchased certificates from appellees because of the enactment of the Tennessee tax.

mitted to challenge the validity of a New York revenue measure. The tax in that case, however, unlike that presented here, was directly upon interstate transactions in which they were engaged—the transfer of securities—and the complaining parties not only sued in their own behalf but as representatives of their members who, apparently without question, had standing to bring such an action.

The entire subject of standing was treated in the third footnote of the opinion. The Court there held that the out-of-state stock exchanges met the general requirements of standing to support a challenge to the constitutionality of a statute as stated in *Data Processing Service v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The Court stated that the exchanges were "arguably" within the zone of interests to be protected by the constitutional guarantee in question—the right to engage in their interstate sales free from discriminatory taxes. But the Court emphasized:

> "Moreover, the Exchanges brought this action also on behalf of their members . . . . The Exchanges' complaint alleged that their members traded on their own accounts in securities subject to the New York transfer tax. The members therefore suffer an actual injury within the zone of interests protected by the Commerce Clause, and the Exchanges satisfy the requirements for representational standing." 429 U.S. at 321, 97 S.Ct. at 602–03.

There is no claim of representational standing in the present case. The action is not brought for or on behalf of the depositors of the banks, nor is there any assertion that appellees have the authority to do so. The action is brought by out-of-state corporations challenging an internal domestic tax upon the basis that their customers (depositors) are adversely affected by the tax and that appellees therefore may challenge its validity.

█ If an internal state revenue measure may be thus challenged by a foreign corporation which is not even qualified to do business and does not in fact do business

within the state, then, indeed, the requirements that taxpayers pay their taxes under protest and bring suits for recovery are greatly weakened. Any foreign business affiliate, vendor or vendee of a local taxpayer could challenge any domestic privilege tax with a claim similar to that asserted here. Ordinarily the fact that a challenge to a statute is based upon constitutional grounds rather than upon some other does not obviate the requirements of standing and compliance with statutory requirements.

In the case of *Shelton v. Platt,* 139 U.S. 591, 11 S.Ct. 646, 35 L.Ed. 273 (1891), which arose shortly after the adoption of the Tennessee statutes providing for payment under protest and suit for refund, those statutes were held to provide an adequate remedy. There an action had been brought by an out-of-state corporation challenging the validity of a Tennessee revenue measure. The Court said:

> "The question whether, even if the Act under which the tax in question was imposed were unconstitutional and the tax void, complainant on behalf of the express company was entitled to the relief accorded, meets us on the threshold." 139 U.S. at 594, 11 S.Ct. at 647.

The Court held that the action could not be maintained and that the suit should have been dismissed.

█ Appellees insist that they have no other means at law or in equity by which to challenge the Tennessee statute except a declaratory judgment action, since they admittedly are not taxpayers and are not subject to the jurisdiction of this state. The answer to that contention seems to us to be that the state is not required to accord to every person or corporation outside its borders standing to challenge its revenue laws simply because they may claim some adverse effect from them. Appellees, at most, are indirectly affected by the Tennessee statute, as, theoretically, financial institutions in other states may be. The tax is not upon them or their privilege to engage in the banking business. It is exclusively

upon local citizens in the receipt of their private incomes. Without question innumerable citizens and taxpayers have standing to challenge this tax on the grounds alleged by appellees and possibly for additional reasons. Appellees do not represent any of these taxpayers, however, and, in our opinion, have not shown standing to seek declarative or injunctive relief in their own right or otherwise. Basically they seek to have determined the validity of a tax upon persons other than themselves. This, in our opinion, they are not permitted to do. *Brodbine v. Torrence,* 545 S.W.2d 743 (Tenn.1977).

The judgment of the Chancellor is reversed and the suit is dismissed at the cost of appellees.

FONES, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.