**DOMINION NATIONAL BANK, et al.**
**Plaintiffs-Appellees,**

v.

**Martha B. OLSEN, et al.,**
**Defendants-Appellants.**

**No. 83–5803.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 18, 1984.

Decided Aug. 20, 1985.

William M. Leech, Jr., Atty. Gen. of Tennessee, Nashville, Tennessee 37219 (615/741–3491; 741–2968) Charles L. Lewis, argued, Gregory L. Nelson, Nashville, Tenn., for defendants-appellants.

Robert L. Crossley, argued, Ralph E. Tallant, Jr., Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, Tenn., for plaintiffs-appellees.

Before EDWARDS * and CONTIE, Circuit Judges, and BELL,** District Judge.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

 Defendants in this case appeal from an injunction issued by Judge Clure Morton against the State of Tennessee forbidding the state from enforcing Tennessee Code Annotated § 67–2601(b). This statute had the effect of levying a state tax on the earnings from certificates of deposits issued by out-of-state financial institutions but owned by residents of the State of Tennessee. The statute provides as follows:

> The word "bond" shall be held and construed to include all obligations issued by any person, firm, joint-stock company, business trust or corporation organized and doing business under the laws of this state, or any other state, evidenced by an instrument whereby the obligor is bound to pay interest to the obligee regardless of whether the obligor is doing business in this state, or whether the obligation under the terms of which the interest accrues is a mortgage or lien on property located in this state or beyond the jurisdiction thereof; provided that the word "bond" shall not include ordinary commercial paper, trade acceptance, etc., maturing in six (6) months or less from the date of issuance; *provided further that the word "bond" shall not include certificates of deposits, issued by a bank, savings and loan association, or credit union chartered under the laws of this state or of the United States lawfully doing business under the laws of this state.*

Tenn.Code Ann. § 67–2601(b) (Emphasis added).[1]

The disputed provision in this litigation concerns the proviso added by amendment in 1982 and emphasized above. 1982 Tenn. Pub. Acts (Adj.S.) ch. 652, § 1.

The plaintiffs in this case are three Virginia banks doing business in Bristol, Virginia just across the state line from Tennessee. They, of course, fear that the provision just referred to will damage their business with Tennessee customers. The banks are not threatened with paying the tax but equally clearly their Tennessee customers would be faced with doing so.

The fundamental law applicable to this case may be found in the Constitution of the United States. In the original Constitution under Article I, Section 8, we find: "The Congress shall have Power ... to regulate Commerce ... among the several States...." Further in the Fourteenth Amendment, the Constitution provides: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."

The enactments referred to above respect the efforts of those who had experienced the turmoil of the war for independence and later the horrors of the Civil War to form one united nation. The United

---

* Honorable George Edwards took senior status January 15, 1985.

** Honorable Sam H. Bell, U.S. District Court for the Northern District of Ohio, sitting by designation.

1. The former Tenn.Code Ann. § 67–2601(b) has been recodified as Tenn.Code Ann. § 67–2–101(1) (1983).

States Supreme Court reaffirmed the significance of the Commerce Clause and the Equal Protection Clause as limitations on the power of the States in the recent case of *Metropolitan Life Insurance Co. v. Ward,* —— U.S. ——, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985):

> *Under Commerce Clause analysis, the State's interest, if legitimate, is weighed against the burden the state law would impose on interstate commerce. In the equal protection context, however, if the State's purpose is found to be legitimate, the state law stands as long as the burden it imposes is found to be rationally related to that purpose, a relationship that is not difficult to establish.* See *Western & Southern [Life Insurance Co. v. State Board of Equalization of California]* 451 U.S. [648, 674, 101 S.Ct. 2070, 2086, 68 L.Ed.2d 514 (1981)] (if purpose is legitimate, equal protection challenge may not prevail so long as the question of rational relationship is " 'at least debatable' " (quoting *United States v. Carolene Products Co.,* 304 U.S. 144, 154 [58 S.Ct. 778, 784, 82 L.Ed. 1234] (1938)).

> *The two constitutional provisions perform different functions in the analysis of the permissible scope of a State's power—one protects interstate commerce, and the other protects persons from unconstitutional discrimination by the States.* See *Bethlehem Motors Corp. v. Flynt,* 256 U.S. 421, 423-24 [41 S.Ct. 571, 572-73, 65 S.Ct. 1029] (1921). The effect of the statute at issue here is to place a discriminatory tax burden on foreign insurers who desire to do business within the State, thereby also incidentally placing a burden on interstate commerce. *Equal protection restraints are applicable even though the effect of the discrimination in this case is similar to the type of burden with which the Commerce Clause also would be concerned.* We reaffirmed the importance of the Equal Protection Clause in the insurance context in *Western & Southern* and see no reason now for reassessing that view.

In whatever light the State's position is cast, acceptance of its contention that promotion of domestic industry is always a legitimate state purpose under equal protection analysis would eviscerate the Equal Protection Clause in this context. A State's natural inclination frequently would be to prefer domestic business over foreign. If we accept the State's view here, then any discriminatory tax would be valid if the State could show it reasonably was intended to benefit domestic business. A discriminatory tax would stand or fall depending primarily on how a State framed its purpose—as benefitting one group or as harming another. This is a distinction without a difference, and one that we rejected last term in an analogous context arising under the Commerce Clause. *Bacchus Imports, Ltd. v. Dias,* [—— U.S. ——, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984)]. See n. 6, *supra.* We hold that under the circumstances of this case, promotion of domestic business by discriminating against nonresident competitors is not a legitimate state purpose.

105 S.Ct. at 1683–84 (footnotes omitted) (emphasis added).

We do not, of course, write in this case on an empty slate. The United States Supreme Court has interpreted these constitutional enactments in many cases by now. Here we rely primarily upon those decisions interpreting the Commerce Clause. The following we deem applicable to and controlling of our decision. *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977); *Great Atlantic Tea Co. Inc. v. Cottrell, Health Officer of Mississippi,* 424 U.S. 366, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976); *McLeod v. J.E. Dilworth Co.,* 322 U.S. 327, 330, 64 S.Ct. 1023, 1025, 88 L.Ed. 1304 (1944); and *Freeman v. Hewit,* 329 U.S. 249, 252, 67 S.Ct. 274, 276, 91 L.Ed. 265 (1946).

In the *Boston Exchange* case, the New York legislature had amended a state transfer tax statute applicable to securities transactions so that stock transactions in-

volving an out-of-state sale were more heavily taxed than most transactions involving a sale within the state. The obvious effect was to occasion New York State investors to use the stock exchange in New York. The Supreme Court, with Mr. Justice White writing, held that under the Commerce Clause, no state could "impose a tax which discriminates against interstate commerce by providing a direct commercial advantage to local business." 429 U.S. at 329, 97 S.Ct. at 607.

On the basic issue of whether the Commerce Clause of the Constitution has been violated by this tax, we believe the *Boston Stock Exchange* case is dispositive.

Appellants argued below and argue here that the challenged tax passes constitutional muster when viewed in light of the Supreme Court's statement in *Colgate v. Harvey*, 296 U.S. 404, 56 S.Ct. 252, 80 L.Ed. 299 (1935), that "a tax upon income is not an interference with interstate commerce simply because the income is derived from a source within another state; and, moreover, if there be any tendency to interfere with such commerce, it is purely collateral and incidental." 296 U.S. at 419, n. 2, 56 S.Ct. at 254, n. 2. The District Court answered this contention by holding:

> [W]e think the "collateral" or direct—indirect test applied in *Colgate v. Harvey* has been replaced with the more realistic inquiry of whether a law "substantially affects" interstate commerce. *See, e.g., Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 614–16 [101 S.Ct. 2946, 2951–53, 69 L.Ed.2d 884] (1981); *Boston Stock Exchange*, [429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977)].

The decisions of the Supreme Court in many years since the *Colgate v. Harvey* decision confirm the correctness of the District Court's holding. In a recent decision striking down a Louisiana tax on natural gas produced in the federal outer continental shelf and piped through Louisiana en route to other states, the Supreme Court stated:

> A state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme. "In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce." *Best & Co. v. Maxwell*, 311 U.S. 454, 455–56 [61 S.Ct. 334, 335, 85 L.Ed. 275] (1940). See *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 69 [83 S.Ct. 1201, 1203, 10 L.Ed.2d 202] (1963); *Gregg Dyeing Co. v. Query*, 286 U.S. 472, 478–80 [52 S.Ct. 631, 633–35, 76 L.Ed. 1232] (1932).

*Maryland v. Louisiana*, 451 U.S. 725, 756, 101 S.Ct. 2114, 2134, 68 L.Ed.2d 576 (1981). *See also Bacchus Imports, Ltd. v. Dias*, — U.S. —, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984); *Westinghouse Electric Corp. v. Tully*, 466 U.S. 388, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984).

Appellants also seek to justify the challenged tax as a measure to compensate for Tennessee's inability to apply to out-of-state banks the Tennessee tax laws and banking regulations under which Tennessee banks must operate. Yet the Commerce Clause places limits on a State's power in this regard:

> The common thread running through the cases upholding compensatory taxes is the equality of treatment between local and interstate commerce. See *Boston Stock Exchange*, 429 U.S., at 331–32 [97 S.Ct. at 607–608]; *Henneford v. Silas Mason Co.*, 300 U.S. 577, 583–84 [57 S.Ct. 524, 527–28, 81 L.Ed. 814] (1937).

*Maryland v. Louisiana*, 451 U.S. at 759, 101 S.Ct. at 2135. We find no such equality of treatment in our instant case.

■ This does not, however, end our consideration of this case. Appellants strongly urge that the Tax Injunction Act of 1937, 28 U.S.C. § 1341 stands in the way of plaintiffs Virginia banks' attack upon this Tennessee statute. The Act relied on reads as follows:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law

where a plain, speedy and efficient remedy may be had in the courts of such state.

28 U.S.C. § 1341 (1982).

If this record showed "a plain, speedy and efficient remedy" in the courts of Tennessee, this, of course, would be a complete answer to the Virginia banks' suit. This record, however, demonstrates clearly that the Virginia banks were aware of the terms and purposes of the Tax Injunction Act and sought relief thereunder. Their efforts to invoke the federal constitutional principles, which we have already discussed above, were frustrated when the Tennessee Supreme Court rejected their suit in *Dominion National Bank v. Olsen*, 651 S.W.2d 215 (Tenn.1983). The Tennessee Supreme Court held that only Tennessee taxpayers had standing to challenge Tennessee state taxes.

Under this circumstance, we do not see any "plain, speedy and efficient remedy" for out-of-state parties whose business is threatened by the tax here imposed.

Additionally, we find no difficulty in holding that the plaintiffs have suffered an injury in fact and that they were within the "zone of interest" regulated by the statute here under assault. *See Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

For this reason and others further explicated by Judge Morton, the judgment of the District Court is affirmed.

CONTIE, Circuit Judge, concurring.

Although I agree with the result reached by the majority opinion, I write separately in order to articulate more fully my views about each of the three issues presented. As indicated in the majority opinion, the plaintiffs are three banks located in Bristol, Virginia. Although these banks neither do business in Tennessee nor are authorized to do so, Tennessee customers cross the border in order to invest in certificates of deposit. Before 1982, Tennessee imposed a six percent per annum income tax on stock dividends and bond interest earned by Ten-

nessee residents. Tenn.Code Ann. § 67–2601(b) defined the term "bond," however, to exclude certificates of deposit. Before 1982, therefore, Tennessee did not tax interest income earned by a Tennessee resident on a certificate of deposit regardless of the location of the financial institution issuing the certificate.

In 1982, the Tennessee legislature amended § 67–2601(b). Now codified as Tenn.Code Ann. § 67–2–101(1)(B)(ii), the amendment provides that the term "bond" shall not include certificates of deposit issued by financial institutions chartered either by the State of Tennessee or by the United States and lawfully doing business under Tennessee law. The practical effect of this amendment is that although interest earned by Tennessee residents on certificates of deposit issued by financial institutions in Tennessee remains untaxed, interest earned by Tennessee residents on certificates issued by foreign financial institutions, such as the Virginia banks, is now subject to the state income tax. The parties have stipulated that the purpose of the amendment was to keep "as much capital as possible within the state" (App. at 60) and that "the tax on out of state certificates of deposit was not a significant revenue measure and not a consideration in overall state revenue projections." *Id.* It also is undisputed that Tennessee residents pay the income tax and that foreign financial institutions such as the plaintiff banks neither pay the tax nor file a tax return.

The plaintiffs first challenged the tax in state court on the theory that it discriminates against interstate commerce in violation of the Commerce Clause. U.S.Const. Art. I, § 8, Cl. 3. In *Dominion National Bank v. Olsen*, 651 S.W.2d 215 (Tenn.1983), the Tennessee Supreme Court rejected this claim on the ground that since the plaintiffs were not themselves subject to the tax, they had no standing under state law to pursue the claim. The Court held that only Tennessee taxpayers have standing to challenge the tax.

The plaintiffs then filed the instant action and submitted affidavits stating that Tennessee residents had already withdrawn over one million dollars from the Virginia banks solely because of the new tax and that additional millions were at risk. The defendants did not file counter-affidavits. In granting summary judgment to the plaintiffs, the district court held that the plaintiffs had standing under federal law to challenge the tax, that declaratory and injunctive relief was not barred by the Anti-Injunction Act, 28 U.S.C. § 1341, and that the tax discriminated against interstate commerce in violation of the Commerce Clause. The district court declared Chapter 652 of the Tennessee Public Acts of 1983 unconstitutional "insofar as it discriminates against interstate commerce" (App. at 76) and enjoined the defendants "from enforcing Tenn.Code Ann. § 67-2601(b) so as to tax interest earned on certificates of deposit issued by out-of-state financial institutions." *Id.*

On appeal, the issues remain whether the plaintiffs have standing to challenge the tax, whether the relief granted by the district court is barred by the Anti-Injunction Act and whether the challenged tax violates the Commerce Clause. Since the parties have not raised an Equal Protection Clause issue, I do not, unlike the majority opinion, reach that question.

### I.

Although the Tennessee Supreme Court held that the plaintiffs lack standing to challenge the tax in state court, that decision is irrelevant in determining whether the Virginia banks have standing in federal court. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 262 n. 8, 97 S.Ct. 555, 561 n. 8, 50 L.Ed.2d 450 (1977). The United States Supreme Court set forth criteria to be applied in deciding standing issues in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (hereinafter *Americans United.) See also Allen v. Wright,*

— U.S. ——, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). The Court held that the standing issue implicates both the case or controversy requirement of Article III and also certain prudential considerations. *Americans United*, 454 U.S. at 471, 102 S.Ct. at 757. At an "irreducible minimum," each of the Article III requirements must be satisfied. *Id.* at 472, 475, 102 S.Ct. at 758, 760. The Article III requirements are that the plaintiff must personally have suffered actual or threatened injury as a result of the defendant's putatively illegal conduct, that this injury "fairly can be traced to the challenged action" and that this injury "is likely to be redressed by a favorable decision." *Id.* at 472, 102 S.Ct. at 758. The prudential considerations include whether the plaintiff asserts his own rights rather than those of third parties, whether the complaint presents a generalized grievance on an abstract question of wide public significance that most appropriately should be addressed in the legislative branches and whether the plaintiff's action falls "within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 474–75, 102 S.Ct. at 760. *See also Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) (zone of interests test). The constitutional provision involved in this case is the Commerce Clause. In determining whether a plaintiff has standing under the *Americans United* test, the courts must consider the material allegations of the complaint and any affidavits submitted by the parties. *See Jet Courier Services, Inc. v. Federal Reserve Bank*, 713 F.2d 1221, 1225 (6th Cir.1983).

The plaintiff banks clearly satisfy the Article III requirements. First, the Virginia banks have suffered actual injury because Tennessee residents already have withdrawn over one million dollars in deposits as a result of the tax. Although this injury is an indirect effect of the tax assessed against Tennessee depositors, this court has held that indirect economic harm resulting from governmental action can

constitute injury in fact. *Jet Courier*, 713 F.2d at 1225. Second, this economic injury fairly can be traced to the state's action because the uncontradicted affidavits state that the banks have identified over one million dollars in deposits that Tennessee residents have withdrawn *solely* because of the new tax. Third, a judgment declaring the new tax unconstitutional and enjoining its enforcement likely will redress the plaintiffs' injury because such a judgment would eliminate the Tennessee depositors' incentive to remove funds from the Virginia banks.

Analysis of the prudential considerations also indicates that the plaintiffs have standing. First, the Virginia banks are asserting their own constitutional right to engage in interstate commerce free from discriminatory taxes that clearly affect their businesses. *See Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 320 n. 3, 97 S.Ct. 599, 602 n. 3, 50 L.Ed.2d 514 (1977). In contrast, the Tennessee depositors have little or no incentive to protect interstate commerce because they may avoid the effects of the new tax simply by withdrawing their funds from foreign financial institutions and investing their money in certificates of deposit issued by Tennessee banks. Second, the plaintiffs' complaint does not present a generalized grievance about an abstract question of wide public significance that should be left to the legislature. The plaintiffs, members of a group consisting of foreign financial institutions, challenge a tax peculiarly affecting them. Moreover, the federal courts have protected federal constitutional values against legislative encroachment since the Supreme Court's decision in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). To leave the protection of the Commerce Clause values involved in this case to Congress or to the Tennessee legislature would dishonor that tradition. Third, it cannot seriously be disputed that protecting interstate commerce from discriminatory state taxes lies within the zone of interests protected by the Commerce Clause. Since the plaintiffs have satisfied the Article III requirements, and since the three prudential considerations identified by the Supreme Court operate in their favor, the plaintiffs have standing to challenge the tax in question.

## II.

The second issue that must be addressed before reaching the merits is whether the district court had jurisdiction to grant declaratory and injunctive relief despite the Anti-Injunction Act, 28 U.S.C. § 1341. That statute provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

Under this statute, a district court lacks jurisdiction to grant either declaratory or injunctive relief if the state provides a plain, speedy and efficient remedy. *California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507, 73 L.Ed.2d 93 (1982); *Aluminum Company of America v. Department of Treasury, State of Michigan*, 522 F.2d 1120, 1122–23 (6th Cir.1975) (hereinafter *Alcoa* ). The plain, speedy and efficient remedy requirement is procedural in nature. *Grace Brethren*, 457 U.S. at 411, 102 S.Ct. at 2509; *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 512, 101 S.Ct. 1221, 1228, 67 L.Ed.2d 464 (1981). The requirement is satisfied if the state affords a full hearing and judicial determination at which all constitutional objections to the tax may be raised. *Grace Brethren*, 457 U.S. at 411, 102 S.Ct. at 2509; *Rosewell*, 450 U.S. at 514, 101 S.Ct. at 1229.

In the present case, the Tennessee courts clearly did not provide a full hearing and judicial determination at which the plaintiffs could raise all constitutional objections; for as has previously been indicated, the Tennessee Supreme Court refused to consider the merits of the plaintiffs' Commerce Clause claim on grounds of standing. Moreover, permitting a suit for declaratory and injunctive relief in this case is not inconsistent with the policies underly-

ing the Anti-Injunction Act. The overarching purpose of § 1341 is "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell*, 450 U.S. at 522, 101 S.Ct. at 1234. This limitation is necessary: (1) to prevent taxpayers from evading state procedures requiring them to pay disputed taxes under protest and to sue for refunds, *id.* at 527, 101 S.Ct. at 1236, (2) to protect the financial stability of states unable to endure the long delays in collecting tax dollars that would inevitably accompany federal litigation even if the state ultimately were to prevail, *id.*, (3) to protect the states from the possibility that taxpayers might become insolvent during the pendency of federal litigation, *id.*, and (4) to prevent the litigation of state tax law issues in the federal courts, *id.; see also Grace Brethren*, 457 U.S. at 410, 102 S.Ct. at 2509. In addition, the limitation on federal jurisdiction eliminates potential forum shopping by foreign taxpayers who otherwise could challenge state taxes in either federal or state courts. *Alcoa*, 522 F.2d at 1124, 1125.

None of these concerns is implicated in the present case. First, since the Virginia banks are not subject to the tax, allowing them to file an action in federal court will not affect Tennessee's system of requiring taxpayers to pay disputed taxes under protest and to sue for refunds, Tenn.Code Ann. §§ 67–1–903 and 67–1–908. The decision in this case is of no benefit to taxpayers seeking to avoid Tennessee's payment under protest system. The Tennessee Supreme Court held in *Dominion National Bank v. Olsen* that taxpayers have standing to challenge allegedly unconstitutional taxes in suits for refunds. 651 S.W.2d at 216, 219. Since the system of requiring a taxpayer to pay a disputed tax and to assert constitutional challenges to the tax in a suit for a refund is a plain, speedy and efficient remedy for purposes of § 1341, *see Grace Brethren*, 457 U.S. at 412, 102 S.Ct. at 2509; *Alcoa*, 522 F.2d at 1126, that section would bar a taxpayer's suit seeking to restrain the collection of taxes imposed by the State of Tennessee.

Second, since the plaintiff banks are not the taxpayers, the state is not threatened with delayed payment of taxes that would be due if the state ultimately were to prevail in this case. Third, the plaintiffs' non-taxpayer status renders irrelevant any concern about their solvency. Fourth, since the parties agree concerning the purpose of the tax and about how the tax operates, there are no state tax law issues to be decided. Finally, since the plaintiffs have been denied access to the Tennessee courts on grounds of standing, the federal forum is the only one available in which they may assert their Commerce Clause claim. By definition, forum shopping is impossible under such circumstances. It bears emphasis, however, that had the Tennessee courts been willing to consider the plaintiffs' substantive claim, a plain, speedy and efficient remedy would have been available and the instant action would have been barred.

The defendants seek to avoid the conclusion that the Anti-Injunction Act does not bar the plaintiffs' action by arguing that the plain, speedy and efficient remedy referred to in § 1341 need only be afforded to taxpayers. Since Tennessee provides such a remedy to taxpayers, *see* text at 115 *supra,* the defendants contend that the state has satisfied the requirements of § 1341 and that the plaintiffs' suit is barred.

To support this claim, the defendants rely upon *Grace Brethren, Alcoa* and *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297, 63 S.Ct. 1070, 1072, 87 L.Ed. 1407 (1943), all of which held that states must provide *taxpayers* with a plain, speedy and efficient remedy before § 1341 will divest the district courts of jurisdiction to afford declaratory or injunctive relief. These cases are distinguishable, however, because they involved suits brought only by taxpayers. These decisions simply did not address the issue of whether a plain, speedy and efficient remedy must be afforded to non-taxpayers who challenge the constitutionality of a state tax.

The district court correctly held that the plain language of § 1341 indicates that a plain, speedy and efficient remedy must be afforded to non-taxpayers. Had Congress intended otherwise, it could have expressed its intention by stating that a suit for declaratory or injunctive relief would be barred where a plain, speedy and efficient remedy may be had *by the taxpayer* in the state courts. Absent such language of limitation, one must conclude that Congress intended that a plain, speedy and efficient remedy must be provided to anyone who has standing to assert a federal challenge to a state tax. As demonstrated in Part I of this opinion, the Virginia banks have standing to assert a Commerce Clause claim.

The defendants make one other argument in support of the claim that the Anti-Injunction Act bars the plaintiffs' action. Citing 26 U.S.C. § 7421(a), the pertinent part of which provides that no person (taxpayer or non-taxpayer) may sue to restrain the assessment or collection of any federal tax,[1] the defendants contend that the federal courts, on grounds of comity, should afford as much deference to state tax systems as Congress has directed the federal courts to accord to the federal tax system. The defendants assert that such deference is particularly appropriate in view of Tennessee's prohibition against suits hindering the collection of state taxes. *See* Tenn. Code Ann. § 67–1–909; *Dominion National Bank v. Olsen*, 651 S.W.2d at 216 n. 3 (Tenn.Code Ann. § 67–2311 (now § 67–1–909) is similar to 26 U.S.C. § 7421(a)).[2] The

defendants' ultimate point is that the plaintiffs' suit would be barred if § 7421(a) were applicable and that similar respect should be accorded to Tennessee's tax system when construing § 1341.

Although the defendants correctly argue that the Supreme Court has held that the broad prohibitory language of § 7421(a) should be given "almost literal affect," *Bob Jones University v. Simon*, 416 U.S. 725, 737, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974), the Court nevertheless has fashioned two exceptions to the general rule that no person, taxpayer or non-taxpayer, may sue in order to restrain the assessment or collection of federal taxes. First, declaratory or injunctive relief is available if the plaintiff establishes irreparable harm and certainty of success on the merits. *See id.* at 737, 94 S.Ct. at 2046; *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 758, 94 S.Ct. 2053, 2057, 40 L.Ed.2d 518 (1974); *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1, 6–7, 82 S.Ct. 1125, 1128–29, 8 L.Ed.2d 292 (1962). Second, a suit for declaratory and injunctive relief may proceed where Congress has provided no alternative method of challenging the constitutionality of a federal tax. *South Carolina v. Regan*, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984).

Assuming *arguendo* that the federal courts should not entertain a suit seeking to restrain the collection of a state tax unless a similar suit could be brought challenging a federal tax, the exception recognized in *Regan* would apply. The Virginia

---

1. Section 7421(a) reads:

 Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

 The exceptions provided for in § 7421(a) are irrelevant here.

2. If the district court had jurisdiction to grant declaratory and injunctive relief despite § 1341, the state could not divest the district court of jurisdiction through § 67–1–909. Federal jurisdiction is grounded solely upon the federal constitution and acts of Congress; state legislatures

cannot enlarge or restrict federal jurisdiction. *Beach v. Owens-Corning Fiberglas Corp.*, 728 F.2d 407, 409 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir.1982); *Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir.1981). The defendants do not appear to argue, however, that the Tennessee legislature has attempted to restrict federal jurisdiction. The defendants only argue that since both federal and state policy prohibits suits seeking to hinder the collection of taxes, the federal courts should not permit suits to restrain the collection of state taxes where the courts would not entertain suits to restrain the collection of federal taxes.

banks may not pay the tax in question and sue for a refund because they are not the taxpayers; the tax is assessed against, and collected from, only the Tennessee depositors. *See Regan,* 104 S.Ct. at 1115 (where the plaintiff's nontaxpayer status prevented it from utilizing the federal government's payment under protest and suit for refund remedy, § 7421(a) did not bar the plaintiff's action). Moreover, the Tennessee courts dismissed the plaintiffs' suit on state law grounds of standing. The only avenue available to the plaintiffs to challenge the tax in question is to seek declaratory and injunctive relief in federal court. Thus, assuming that § 7421(a) standards are appropriate in determining whether the Virginia banks may avoid the barrier to relief set forth in § 1341, the banks satisfy one of the exceptions to the general rule. The Anti-Injunction Act does not bar the instant action.

## III.

Turning to the merits, it is clear that although state taxation of interstate commerce is not invalid *per se* because interstate commerce may be required to bear its share of the costs of services provided by the states, *see, e.g., Maryland v. Louisiana,* 451 U.S. 725, 754, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981), the Commerce Clause prohibits state taxes that discriminate against interstate commerce to the advantage of local business. *Id.; Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). The Commerce Clause was designed "to create an area of free trade among the several States." *See Westinghouse Electric Corp. v. Tully,* 466 U.S. 388, 104 S.Ct. 1856, 1865, 80 L.Ed.2d 388 (1984); *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 328, 97 S.Ct. 599, 605, 50 L.Ed.2d 514 (1977); *Great Atlantic & Pacific Tea Co., Inc. v. Cottrell,* 424 U.S. 366, 370, 96 S.Ct. 923, 927, 47 L.Ed.2d 55 (1976); *McLeod v. J.E. Dilworth Co.,* 322 U.S. 327, 330, 64 S.Ct. 1023, 1025, 88 L.Ed. 1304 (1944). In order to effectuate these principles, the Supreme Court has articulated the following standard to be applied when analyzing state taxes under the Commerce Clause:

> No State, consistent with the Commerce Clause, may "impose a tax which discriminates against interstate commerce ... by providing a direct commercial advantage to local business."

*Bacchus Imports, Ltd. v. Dias,* —— U.S. ——, 104 S.Ct. 3049, 3054, 82 L.Ed.2d 200 (1984) (citations omitted); *Tully,* 104 S.Ct. at 1865; *Maryland v. Louisiana,* 451 U.S. at 754, 101 S.Ct. at 2133; *Boston Stock Exchange,* 429 U.S. at 329, 97 S.Ct. at 606. Moreover, where a tax is found to be discriminatory under this standard, and where the underlying purpose of the tax is simple economic protectionism as opposed to some other arguably legitimate state purpose, the tax virtually always should be invalidated without balancing the state purpose against the interference with interstate commerce. *Dias,* 104 S.Ct. at 3055; *City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978). In this case, the avowed purpose of the tax was to discourage Tennessee residents from investing capital in certificates of deposit issued by foreign financial institutions. The tax was not intended to raise significant revenue. Since the purpose of the tax reflects simple economic protectionism, the tax in question automatically is invalid if it discriminates against interstate commerce.

On its face, the challenged tax discriminates against interstate commerce because interest earned on certificates of deposit issued by foreign financial institutions is now taxed whereas interest earned on certificates issued by Tennessee financial institutions remains untaxed. Tennessee residents have a strong economic incentive to invest in certificates of deposit issued only by financial institutions located within the state.

The defendants insist that the tax is nondiscriminatory, however, relying upon *Colgate v. Harvey,* 296 U.S. 404, 56 S.Ct. 252, 80 L.Ed. 299 (1935). *Colgate* involved a Vermont tax of four percent on interest income earned from securities, including

loans. The tax statute exempted from taxation, however, interest earned on intrastate loans provided that the interest rate did not exceed five percent. The economic effect of this tax was to discourage Vermont taxpayers from making loans other than low interest intrastate loans. In response to the plaintiff's Commerce Clause challenge to this tax, the Supreme Court held in a footnote:

> [a] tax upon income is not interference with interstate commerce simply because the income is derived from a source within another state; and, moreover, if there be any tendency to interfere with such commerce it is purely collateral and incidental.

296 U.S. at 419 n. 2, 56 S.Ct. at 254 n. 2. The defendants contend that footnote two of *Colgate* controls this case because the present case, like *Colgate*, involves a tax upon local receipt of income rather than a tax upon an interstate transaction. Thus, the tax either does not interfere with interstate commerce at all or does so only indirectly. Implicit in this reasoning is the assumption that a state tax having an indirect discriminatory effect on interstate commerce does not violate the Commerce Clause. The defendants distinguish the *Boston Stock Exchange* decision on the ground that that case involved a direct tax upon an interstate transaction as opposed to a tax upon local receipt of income having only an indirect effect on interstate commerce.

The defendants correctly point out that the Supreme Court has never expressly overruled the Commerce Clause holding of *Colgate*.[3] Nevertheless, subsequent Supreme Court decisions indicate that the *Colgate* Commerce Clause analysis has been overruled *sub silentio*. *Colgate* was decided at a time when it was thought that the Commerce Clause absolutely prohibited the states from directly taxing interstate commerce. *See Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 614, 101

S.Ct. 2946, 2951, 69 L.Ed.2d 884 (1981). During this era, the Supreme Court would uphold a state tax affecting interstate commerce only if the tax were assessed against a local event and if the effect on interstate commerce were merely incidental and collateral.

Subsequent Supreme Court decisions demonstrate, however, that the emphasis has shifted away from the directness of a state tax upon interstate commerce and towards the directness of any competitive advantage gained. As has already been indicated, states may now impose non-discriminatory taxes directly upon interstate commerce. *See Maryland v. Louisiana*, 451 U.S. at 754, 101 S.Ct. at 2133; *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959); Blumstein, *Some Intersections of the Negative Commerce Clause and the New Federalism: The Case of Discriminatory State Income Tax Treatment of Out-of-State Tax-Exempt Bonds*, 31 VAND.L.REV. 473, 509 (1978) (hereinafter Blumstein). Moreover, the Supreme Court has "rejected any suggestion that a state tax or regulation affecting interstate commerce is immune from Commerce Clause scrutiny because it attaches only to a 'local' or intrastate activity." *Commonwealth Edison*, 453 U.S. at 615, 101 S.Ct. at 2952 (severance tax on mineral extraction scrutinized under the Commerce Clause). *See also Boston Stock Exchange*, 429 U.S. at 332–33 n. 12, 97 S.Ct. at 608 n. 12. Thus, the fact that the challenged tax is assessed against receipt of income in Tennessee rather than against an interstate transaction (*i.e.*, the act of investing in a certificate of deposit issued by a foreign institution), is irrelevant. The only relevant issue, whether the tax on interstate commerce be direct or indirect, is whether the tax *as a practical matter* creates a direct competitive advantage for local business by discriminating against interstate commerce. *Common-*

---

**3.** *Colgate* construed the Commerce Clause and the Equal Protection and Privileges and Immunities Clauses of the Fourteenth Amendment. Although the Supreme Court subsequently overruled the *Colgate* Privileges and Immunities

Clause analysis, *see Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940), the Court has not expressly repudiated the *Colgate* Commerce Clause analysis.

*wealth Edison,* 453 U.S. at 615, 101 S.Ct. at 2952; *Maryland v. Louisiana,* 451 U.S. at 756, 101 S.Ct. at 2134; *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 443, 100 S.Ct. 1223, 1234, 63 L.Ed.2d 510 (1980); *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 69, 83 S.Ct. 1201, 1203, 10 L.Ed.2d 202 (1963). If the challenged tax discriminates in this fashion, it is invalid under the Commerce Clause. The Commerce Clause analysis of *Colgate,* which emphasized whether a state directly taxed interstate commerce rather than whether a state tax as a practical matter directly creates a competitive advantage for local business, no longer is good law.

Under the economic theory propounded by the Supreme Court in recent cases, the tax in question clearly discriminates against interstate commerce to the direct competitive advantage of Tennessee financial institutions. The central element of the Supreme Court's theory is that a state taxpayer's decision about whether to transact business within a state or out of state should be governed by non-tax criteria. *Tully,* 104 S.Ct. at 1867; *Boston Stock Exchange,* 429 U.S. at 330–31, 97 S.Ct. at 607–08. *See also,* Blumstein 31 VAND.L. REV. at 517–18, 559–60. Before the Tennessee legislature amended § 67–2601(b) in 1982, the state tax structure as to interest income earned on certificates of deposit was constitutional because such interest went untaxed regardless of the location of the issuer of the certificate.[4] After the Tennessee legislature amended § 67–2601(b), however, the tax system as to interest earned on certificates of deposit became unconstitutional because a Tennessee depositor's decision about whether to invest in foreign or domestic certificates of deposit was not governed by tax-neutral criteria. Since the Tennessee tax on interest income earned on certificates of deposit issued by foreign financial institutions discriminates against interstate commerce to the direct commercial advantage of Tennessee financial institutions, the district court

correctly declared Chapter 652 of the Tennessee Public Acts of 1983 unconstitutional and enjoined the defendants from enforcing the tax. I concur in the judgment of the majority.

---

**4.** Had Tennessee taxed interest earned on a certificate of deposit before 1982 regardless of the location of the issuer, such a tax system also would have been constitutional.