**INDIANA DEPARTMENT OF STATE REVENUE et al., Appellants and Cross–Appellees, (Defendants Below),**

v.

**R. Powell FELIX, individually and on behalf of all others similarly situated, Appellees and Cross–Appellants, (Plaintiffs Below).**

**INDIANA DEPARTMENT OF STATE REVENUE, Appellant and Cross–Appellee, (Defendant Below),**

v.

**Russell T. and Mary R. CLARKE, Appellees and Cross–Appellants, (Plaintiffs Below).**

Nos. 49S00–8905–CV–388, 49S02–8906–CV–499.

Supreme Court of Indiana.

May 16, 1991.

Marilyn Meighen, Deputy Atty. Gen., Michael B. Cracraft, Harry F. Todd, Hackman McClarnon Hulett & Cracraft, Indianapolis, for appellants and cross-appellees.

James E. Hughes, Sommer & Barnard, Kent Emswiller, Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, Richard A. Allen, Andrew R. Plump, Zuckert, Scoutt & Rasenberger, Washington, D.C., for appellees and cross-appellants.

SHEPARD, Chief Justice.

R. Powell Felix and Russell T. and Mary R. Clarke filed separate actions challenging the constitutionality of Indiana's intangibles tax. They contended that the tax violated the commerce clause of the United States Constitution, U.S. Const. art. I, sec. 8, cl. 3, and the uniform taxation provisions in article 10, section 1 of the Indiana Constitution. The Marion Superior Court declared the intangibles tax unconstitutional under both the federal and state constitutions. We reverse.

### Case History

From 1983 to 1987, Felix paid at least $20.90 in intangibles tax on shares owned in a money market fund of Merrill Lynch Pierce Fenner and Smith of Delaware. He first filed suit in Johnson Circuit Court on December 24, 1984, seeking a preliminary injunction against collection of the Indiana intangibles tax.[1] In the alternative, he sought an order assigning tax collections to an interest-bearing escrow account pending outcome of the suit. His suit was dismissed on August 9, 1985. That dismissal was affirmed on the grounds that Felix failed to exhaust his administrative remedy, by not filing a claim for refund with the Department of Revenue. *Felix v. Indiana Dep't of State Revenue* (1986), Ind.App., 502 N.E.2d 119, 120. Felix did file a claim on June 3, 1985; it was denied on December 2, 1985.

The Clarkes filed an action on March 27, 1985, in Marion Circuit Court, to contest $28.00 in intangibles taxes paid in 1981. Their claim for refund had been rejected by the Department of State Revenue on March 11, 1985. The Clarkes moved from the state in 1982.

---

**1.** Ind.Code §§ 6–5.1–1–1 to –9–4 (West 1989) (repealed retroactive to Nov. 10, 1988, Pub.L. No. 80–1989, §§ 18–19, 1989 Ind.Acts 912, 919). Relevant portions of the repealed statute provided as follows:

**"Intangible"**

Sec. 1. The term "intangible" includes:

....

(2) a share of stock in a foreign corporation....

Ind.Code § 6–5.1–1–1(2) (West 1989) (repealed).

**Privileges taxed; trusts; nonresidents**

Sec. 1. (a) A person residing or domiciled in Indiana shall pay an intangibles tax in the manner provided in this article for exercising any of the following privileges:

(1) executing, selling, assigning, transferring, renewing, removing, consigning, mailing, shipping, trading-in, controlling, or enforcing an intangible;

(2) receiving income, increase, issues, or profits of an intangible;

(3) passing an intangible or income from an intangible to another person by will, gift, or intestate succession; or

(4) having an intangible classified for tax purposes.

Ind.Code § 6–5.1–2–1(a) (West 1989) (repealed).

**Intangibles exempt**

Sec. 7. A person is exempt from the intangibles tax measured by the following intangibles:

....

(4) stock of:

....

(E) an Indiana corporation;

(5) an interest in a partnership, firm, or association doing business in Indiana;

....

(15) deposits or certificates of deposit in banks in Indiana;

(16) deposits or certificates of deposit in trust companies in Indiana....

Ind.Code § 6–5.1–5–7 (West 1989) (repealed).

After the Johnson Circuit Court dismissed Felix's case and Felix filed his refund claim, the Clarkes moved to amend their complaint for the purpose of adding Felix as a plaintiff. At the same time, they filed motions seeking a preliminary injunction or an escrow account to hold taxes collected and requesting class certification. All motions were denied.

Felix subsequently filed a separate action in Marion Superior Court on March 25, 1986. The Clarke case was later consolidated with this case in Marion Superior Court. Felix filed a motion seeking an escrow account and requesting class certification on June 23, 1986. The court certified the class on March 18, 1987. Relying on the State's argument that the plaintiffs had an adequate remedy for refunds under Indiana Code § 6–8.1–9–1 if successful on the merits, the court denied the motion for an escrow account on June 27, 1987.

On November 10, 1988, the trial court issued its judgment in both cases on cross-motions for summary judgment. The court reaffirmed that Felix adequately represented the class and held the tax violated both the federal and state constitutions. It ordered all taxes paid on or after June 23, 1987, refunded with interest.

The court rejected Felix's claim for a refund of all taxes paid after June 3, 1982. It limited the retroactivity of relief using the criteria of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The court found in part that refunding over $300,000,000 in taxes dating back to 1981 or 1982 would be an inequitable hardship on the State with no remedial effect. After both sides filed motions to correct errors, the trial court changed the effective date for refunds to May 1, 1987, the date the State presented its "adequate remedy" argument in response to the plaintiffs' motion to establish an escrow account.

In 1989, the legislature repealed the intangibles tax retroactive to November 10, 1988. Pub.L. No. 80–1989, §§ 18–19, 1989 Ind. Acts 912, 919. The legislature also enacted new law prescribing requirements for taxpayer class actions. Pub.L. No. 91–

1989, § 2, 1989 Ind.Acts 953, 954 (codified at Ind.Code § 6–8.1–9–7 (West Supp.1990)).

Both sides appeal decisions of the trial court. They present us with five issues:

I. Does the intangibles tax violate the commerce clause of the U.S. Constitution?

II. Does the intangibles tax violate the uniformity provisions of article 10, section 1 of the Indiana Constitution?

III. Did the trial court err in rejecting the plaintiffs' claims under 42 U.S.C. §§ 1983, 1988?

IV. Should the trial court's judgment be retroactive and, if so, to what date?

V. Did the trial court err in deciding the Clarke and Felix motions for class certification?

### I. The Commerce Clause

■ Eighty years ago, this Court and the United States Supreme Court sustained a virtually identical version of the Indiana intangibles tax against a commerce clause challenge. *Darnell v. State* (1910), 174 Ind. 143, 90 N.E. 769, *aff'd, Darnell v. Indiana,* 226 U.S. 390, 33 S.Ct. 120, 57 L.Ed. 267 (1912). Appellants claim the trial court erroneously ignored this controlling precedent. Appellees contend that more recent Supreme Court commerce clause cases have superseded *Darnell.* We find *Darnell* controlling.

The Seventh Circuit has recently outlined an analysis for assessing the legal weight of a relatively old decision of the Supreme Court. *Levine v. Heffernan,* 864 F.2d 457 (7th Cir.1988), *cert. denied,* — U.S. —, 110 S.Ct. 204, 107 L.Ed.2d 157 (1989). The court found that "the two essential issues relating to [the case's] precedential effect [are] whether the decision has been implicitly overruled and, if not, whether it is factually distinguishable from [the case at bar]." 864 F.2d at 460. *Heffernan* is based on the premise that only the Supreme Court may overrule one of its own precedents. 864 F.2d at 461; *see also Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has direct application in

a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

We believe *Heffernan* presents an excellent way of analyzing questions such as the commerce clause question in this case. Inasmuch as the validity of Indiana's intangibles tax under the commerce clause was resolved in *Darnell v. Indiana,* the decision in *Darnell* should control this litigation unless it is clear either that (1) *Darnell* has been implicitly overruled by subsequent Supreme Court decisions, or (2) that *Darnell* is still good law but factually distinguishable from the instant case.

Isaac Darnell owned shares of capital stock in a Tennessee corporation. Indiana citizens at that time were liable for taxes on all property not expressly exempted from taxation. *See, e.g.,* ch. XXIX, § 30, 1903 Ind.Acts 49, 70 (personal property); ch. XCIX, § 3, 1891 Ind.Acts 199 (all property). Under chapter XXIX, § 32, 1903 Ind.Acts at 74, Indiana residents had to report for tax purposes "[a]ll shares of stock in any corporation formed outside of this State; and also all shares of stock in any corporation formed in this State and conducting its business outside of this State." Indiana sued Darnell for taxes owed on the value of his shares. Darnell contested the tax, claiming that it discriminated "in favor of domestic stocks as against shares in a foreign corporation, and that a resident owning stock in a domestic corporation escapes taxation thereon, while his next-door neighbor owning shares of stock in a foreign corporation is required to pay taxes on his holdings." 174 Ind. at 153–54, 90 N.E. at 773. Darnell claimed this discrimination violated the commerce clause of the U.S. Constitution. *Id.* at 154, 90 N.E. at 773.

The Indiana Supreme Court upheld the predecessor to the present intangibles tax. This Court found that the purpose of the Indiana tax law was "to require all property to contribute *pro rata* its share of taxes, and so far as practicable to avoid double

taxation." *Id.* at 156, 90 N.E. at 774. The Court further noted that:

> Domestic corporations are taxed upon all their property.... The State, in its discretion, might tax the shares of stock in such corporation to the individual owners thereof residing in this State, but it would in a sense be double taxation, and it has not been the policy of this State to do so. Shares of stock in a foreign corporation doing business in another state, owned and held by a resident of this State, are taxed because they have not been and cannot be otherwise taxed by this State.... The man who resides in a state and enjoys the benefit of its schools, churches, society, highways and other public accommodations, as well as its governmental protection over his person and property, is in no position to complain when required to contribute by taxation ratably upon his property for the maintenance of these institutions and the local government. It is clear to our minds that the tax law of Indiana is not open to the charge of discrimination against stock in foreign corporations, but imposes only just and equal burdens upon all corporate stocks, without regard to the place of incorporating or of conducting the corporate business, and does not violate either the third clause of article 1, § 8, or the 14th amendment to the Constitution of the United States, and is accordingly valid.

*Id.* at 156–57, 90 N.E. at 774.

Darnell appealed this Court's decision to the U.S. Supreme Court, again arguing that the Indiana tax violated the commerce and equal protection clauses of the United States Constitution. Justice Holmes wrote for a unanimous Court, affirming this Court's decision. Holmes first declared that Darnell's claim was "pretty nearly disposed of by *Kidd v. Alabama,* 188 U.S. 730 [23 S.Ct. 401, 47 L.Ed. 669]" a 1903 equal protection case. Holmes then proceeded to Darnell's contention that Indiana's law worked a discrimination impermissible under commerce clause principles such as those announced in *I.M. Darnell & Son Co. v. Memphis,* 208 U.S. 113, 28 S.Ct. 247, 52 L.Ed. 413 (1908). 226 U.S. at 398, 33 S.Ct.

at 121. The Supreme Court rejected this commerce claim as well, saying that Indiana's taxation of "the property of domestic corporations and the stock of foreign ones in similar cases" was *"consistent with substantial equality"* and therefore valid. *Id.* at 398, 33 S.Ct. at 121 (emphasis added).

■ The "substantially equivalent events" test is still used today to sustain taxes challenged under the commerce clause. *See, e.g., Ashland Oil, Inc. v. Caryl,* — U.S. ——, 110 S.Ct. 3202, 3204, 111 L.Ed.2d 734 (1990). A facially discriminatory tax is upheld as a constitutional compensatory tax if the State is in practice taxing substantially equivalent in-state and out-of-state events to assure uniform treatment of local and interstate commerce. *American Trucking Ass'ns v. Scheiner,* 483 U.S. 266, 287, 107 S.Ct. 2829, 2842, 97 L.Ed.2d 226 (1987) (dicta); *Tyler Pipe Indus., Inc. v. Washington Dep't of Revenue,* 483 U.S. 232, 242–44, 107 S.Ct. 2810, 2817–18, 97 L.Ed.2d 199 (1987); *Armco Inc. v. Hardesty,* 467 U.S. 638, 642–43, 104 S.Ct. 2620, 2622–23, 81 L.Ed.2d 540 (1984); *Maryland v. Louisiana,* 451 U.S. 725, 758–59, 101 S.Ct. 2114, 2135–36, 68 L.Ed.2d 576 (1981); *Henneford v. Silas Mason Co.,* 300 U.S. 577, 583–84, 57 S.Ct. 524, 527–28, 81 L.Ed. 814 (1937); *Huie v. Private Truck Council of Amer.* (1984), Ind., 466 N.E.2d 435, 437. The analytical framework of *Darnell v. Indiana* is therefore still good law.

Appellees contend that this "substantially equivalent events" test has been superseded. It is apparent, however, that several different approaches for assessing the validity of would-be compensatory taxes may be available. *See, e.g.,* Hellerstein, *Complementary Taxes as a Defense to Unconstitutional State Tax Discrimination,* 39 Tax Law. 405, 430–63 (1986). One

of the few clear themes in the quagmire of Supreme Court commerce clause decisions is that state taxes are assessed on a case-by-case basis:

> On various occasions when called upon to make the delicate adjustment between the national interest in free and open trade and the legitimate interest of the individual States in exercising their taxing powers, the Court has counseled that the result turns on the unique characteristics of the statute at issue and the particular circumstances in each case.

*Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 329, 97 S.Ct. 599, 606, 50 L.Ed.2d 514 (1977); *Westinghouse Electric Corp. v. Tully,* 466 U.S. 388, 403, 104 S.Ct. 1856, 1865, 80 L.Ed.2d 388 (1984) (case-by-case analysis has left " 'much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation.' ") (quoting *Boston Stock Exchange,* 429 U.S. at 329, 97 S.Ct. at 606); *Freeman v. Hewit,* 329 U.S. 249, 252, 67 S.Ct. 274, 276, 91 L.Ed. 265 (1946) ("especially in this field opinions must be read in the setting of the particular cases and as the product of preoccupation with their special facts"); *see also Tyler Pipe Indus., Inc. v. Washington Dep't of Revenue,* 483 U.S. at 260, 107 S.Ct. at 2826 (Scalia, J., concurring in part and dissenting in part) ("our applications of the doctrine have, not to put too fine a point on the matter, made no sense").

The diversity of approaches derives from the difficulty of using the commerce clause as a grant of authority to the judiciary. The commerce clause is one of the enumerated powers conferred on Congress by article I. Converting this grant of power to Congress into a grant of free-standing regulatory power to article III courts and to state courts is no mean intellectual feat.[2]

---

**2.** Those who assert that the commerce clause is a source of judicial power commonly cite Chief Justice John Marshall's declaration that the Constitution's grant to Congress is a grant of exclusive power." *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 209, 6 L.Ed. 23 (1824). *Gibbons* involved conflicting statutes enacted by Congress and by the State of New York. Surely

Congress may exercise its commerce power to the exclusion of conflicting decisions of state legislatures, and Marshall was correct that the courts must enforce the decision of Congress, in accordance with the supremacy clause. Accepting that idea hardly lends authority to the proposition, asserted by Justice Strong half a century later, that courts have free-standing authority to

Since *Darnell*'s approach to the commerce clause is still valid, we can find that the case has been implicitly overruled only if later Supreme Court cases have invalidated *Darnell*'s actual holding. Several recent cases have invalidated state taxes purporting to be compensatory taxes. *See, e.g., Armco v. Hardesty,* 467 U.S. at 643, 104 S.Ct. at 2623 (manufacturing and wholesaling not "substantially equivalent events"); *Maryland v. Louisiana,* 451 U.S. at 758–59, 101 S.Ct. at 2135–36 (Louisiana's first-use tax on out-of-state extracted gas not substantially equivalent to in-state severance tax). Because state taxes challenged under the commerce clause are analyzed on a case-by-case basis, however, we cannot infer that *Darnell* has been implicitly overruled without specific indication that an intangibles tax is no longer considered a valid compensating tax for in-state property taxes on domestic corporations. The parties have not presented any such cases.[3] We cannot conclude that *Darnell* has been implicitly overruled by the United States Supreme Court.

We turn now to the second prong of the *Heffernan* test. Given that *Darnell* is still good law, can we determine that the facts of the instant case differ significantly from those in *Darnell?* Remarkably little fact was entered into the record regarding the application and operation of the intangibles tax. Yet both parties asserted in their cross motions for summary judgment that there is no genuine issue as to any fact

material to this dispute. Record at 553, *Indiana Dep't of State Revenue v. Felix,* 49S00–8905–CV–388 (plaintiff's motion for summary judgment); *id.* at 673 (defendants' memo in opposition to plaintiff's motion for summary judgment). On appeal, the shareholders appear to offer three grounds to distinguish the current case from the case of *Darnell.* Two of these grounds for distinguishing *Darnell* are really legal in nature; only the third presents factual matters.

First, stockholders argue that *Darnell* was decided on equal protection grounds rather than commerce clause grounds and is therefore distinguishable from the case at bar. Brief of Appellees at 29–31. The trial court's finding and appellees' contention that the *Darnell* decision was not a commerce clause case are unpersuasive. The pleadings of the parties and the opinions of the courts demonstrate that the commerce clause was unquestionably at issue in *Darnell. See, e.g., Darnell v. Indiana,* 226 U.S. at 397, 33 S.Ct. at 120; *Darnell v. State,* 174 Ind. at 154–55, 90 N.E. at 773.[4] Moreover, as appellants point out, *Darnell v. Indiana* has been explicitly recognized as a commerce clause case. *See, e.g., Hawley v. City of Malden,* 232 U.S. 1, 11, 34 S.Ct. 201, 202, 58 L.Ed. 477 (1914) (noting *Darnell* sustained intangibles tax against commerce clause objections); *see also* Powell, *Supreme Court Decisions on the Commerce Clause and State Taxing Power, 1910–1914,* 22 Colum.

issue orders concerning the flow of interstate commerce even when Congress has not acted at all. *Case of the State Freight Tax [Reading RR. Co. v. Pennsylvania],* 82 U.S. (15 Wall.) 232, 21 L.Ed. 146 (1872). Justice Scalia has recently observed that such judicial power, resting as it does on so little, can only be exercised in a standardless way. *See* Scalia, *The Rule of Law as a Law of Rules,* 56 U.Chi.L.Rev. 1175, 1185 (1989); *see also Tyler Pipe Indus. v. Washington State Dep't of Revenue,* 483 U.S. at 254, 107 S.Ct. at 2823. (Scalia, J., concurring in part and dissenting in part).

**3.** The parties do cite *Dominion National Bank v. Olsen,* 771 F.2d 108 (6th Cir.1985), a decision striking down on commerce clause grounds a Tennessee statute taxing residents on earnings from certificates of deposits issued by out-of-state institutions. The Tennessee tax, however,

was not alleged to be compensating for an in-state property tax. 771 F.2d at 111. The tax was virtually admitted to constitute the kind of interstate warfare that the commerce clause is designed to prohibit. The parties stipulated that the purpose of the tax "was to keep 'as much capital as possible within the state'...." 771 F.2d at 112 (Contie, J., concurring). Anyway, distinguished as it is, the Sixth Circuit has no more authority to overrule *Darnell v. Indiana* than we do.

**4.** Darnell also argued in the Marion Circuit Court that the statute violated the commerce clause. *See* Record at 57, 59, *Darnell v. State* (1910), 174 Ind. 143, 90 N.E. 769 (Demurrer to Complaint, October 10, 1908). He argued the same in the Indiana Supreme Court. Appellant's Brief on Petition for Re-Hearing, *Darnell v. State* (filed March 30, 1910).

L.Rev. 133, 149 (1922). The language of *Darnell* is also virtually identical to that of commerce clause cases eighty years later, as discussed above.

Second, the stockholders assert that, as a commerce clause case, *Darnell* is decided contrary to more recent decisions. Brief of Appellees at 31–33. This contention was rejected above under the first prong of the *Heffernan* test.

Third, stockholders argue that the present intangibles tax differs from the tax at issue in *Darnell*. Brief of Appellees at 30 n. 20. We find little indication of any substantial difference between the two taxes. Justice Holmes' opinion suggests the Supreme Court recognized the former intangibles tax may have applied to Indiana intangibles if the value of an Indiana corporation's stock exceeded the value of its taxable tangible property or if the property of the domestic corporation was not exempt or not taxable to the corporation itself. 226 U.S. at 397, 33 S.Ct. at 120. Such hypothetical contingencies do not appear to be part of the modern version of the tax. There is no evidence, however, to suggest that this distinction was material to the Supreme Court's holding.[5] The stockholders themselves acknowledge that "[a]lthough it is *not clear* from the *Darnell* decision, these provisions concerning the taxation of shares in domestic corporations *may* have been *a factor* in the Court's conclusion." Brief of Appellees and Cross–Appellants R. Powell Felix and Russell T. and Mary R. Clarke at 30 n. 20 (emphasis added). For all that appears, the present intangibles tax is substantially like the one in *Darnell*.

Because the theoretical framework used in *Darnell v. Indiana* is still good law and because the modern tax is substantially like the tax at issue in 1912, we conclude that *Darnell v. Indiana* is dispositive of the commerce clause issue in this litigation. The recently-repealed intangibles tax did not violate the commerce clause of the United States Constitution.

## II. The Indiana Constitution

■ The stockholders also claim the intangibles tax violated the tax uniformity provisions of the Indiana Constitution by taxing intangible property in foreign corporations while not taxing intangible property in Indiana corporations. The Constitution provides in relevant part:

> The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal. The General Assembly may exempt from property taxation any property in any of the following classes:
>
> . . . .
>
> . . . .
>
> (3) Intangible personal property.

Ind. Const. art. 10, § 1.

The trial court sustained the stockholders' challenge, finding that the intangibles tax was an unconstitutional property tax. This holding contradicted a 1935 ruling of this Court which held that a substantially identical version of the intangibles tax was an excise tax rather than a property tax and therefore not subject to article 10, section 1. *See Lutz v. Arnold* (1935), 208 Ind. 480, 193 N.E. 840, 196 N.E. 702.

On appeal the State argues that the intangibles tax was an excise tax, that *Lutz* is controlling, and that accordingly the tax did not violate article 10, section 1. In the alternative the State argues that even if the intangibles tax was a property tax, the amended version of article 10, section 1, cited above, allows the legislature to exempt from property taxation any intangible personal property. Therefore, the State asserts, the intangibles tax did not violate the uniformity requirements of the Indiana Constitution.

The stockholders contend that the intangibles tax was a property tax rather than

---

**5.** *Cf. Henneford v. Silas Mason Co.,* 300 U.S. 577, 587, 57 S.Ct. 524, 529, 81 L.Ed. 814 (1937) (Cardozo, J.) (tax's identical credit for in-state and out-of-state taxes paid had not been necessary to uphold tax). *But see Tyler Pipe Indus., Inc. v. Washington Dep't of Revenue,* 483 U.S. at 245, 107 S.Ct. at 2878 (claiming identical burdens had been required in *Henneford*).

an excise tax. They further argue that *Lutz* was implicitly overruled by *Wright v. Steers* (1962), 242 Ind. 582, 179 N.E.2d 721, which held that a 1961 automobile "excise" tax violated article 10, section 1 of the Indiana Constitution. The stockholders contend that as a property tax, the intangibles tax violated the uniformity requirement of article 10, section 1 because the legislature levied a property tax on intangibles but did not do so uniformly over foreign and Indiana corporate shares.

In *Lutz v. Arnold*, this Court upheld the intangibles tax against a challenge that the tax violated article 10, section 1 of the Indiana Constitution. Section 1 then required that:

> The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specifically (sic) exempted by law.

208 Ind. at 502, 193 N.E. at 849. Two Justices in *Lutz* found that the intangibles tax was an excise tax rather than a property tax, and therefore the equality and uniformity requirements of section 1 did not apply. 208 Ind. at 496, 193 N.E. at 846. The concurring Justice agreed that the intangibles tax was an excise tax and did not violate section 1. *Id.* at 512–13, 196 N.E. at 703 (Treanor, C.J., concurring). He further declared, though, that the tax would not violate article 10, section 1, even if it were a property tax. *Id.* at 519–20, 196 N.E. at 705.

The dissenters in *Lutz* asserted that the intangibles tax violated article 10, section 1 regardless of whether it was an excise tax or a property tax. *Id.* at 526, 193 N.E. at 855 (Fansler, C.J. and Roll, J., dissenting). Since the Constitution required uniform and equal taxation of property, the dissenters reasoned, the State could not withdraw intangibles from the taxable property base merely by levying an alternative tax. If the intangibles tax were an excise tax, they said, it violated the uniformity condition of section 1 since intangibles were then improperly excluded from the property tax, *id.* at 522–23, 193 N.E. at 853. If the intangibles tax were a property tax, it violated the uniform and equal rate requirement of section 1 because the intangibles tax was set at a different rate from all other types of taxes. *Id.* at 523, 193 N.E. at 854.

When the *Wright* court voided the 1961 automobile excise tax, it used the approach offered by the dissenters in *Lutz*, holding that the automobile tax violated article 10, section 1 regardless of whether the tax was an excise tax or a property tax. *Wright v. Steers* (1962), 242 Ind. 582, 179 N.E.2d 721. In reaching that holding, the *Wright* court did say, "[t]he conclusions and results which we have reached in this case would be relatively without difficulty were it not for the case of *Lutz*." 242 Ind. at 589–90, 179 N.E.2d at 725 (citation omitted). Rather than overturning the *Lutz* determination that the tax was an excise tax, the *Wright* court simply agreed with the *Lutz* dissenters' approach in finding that the legislature could not exempt any property from uniform and equal general property taxation under article 10, section 1 except property used for a municipal, educational, literary, scientific, religious, or charitable purpose.

Under the *Wright* analysis, the intangibles tax does not violate the uniformity requirement of the present article 10, section 1.[6] *Cf. Wright*, 242 Ind. at 591, 179 N.E.2d at 726 (suggesting that amendment to the Constitution could remedy tax's invalidity). The legislature is now explicitly entitled to exempt from property taxation any property in the intangible personal property class. Ind. Const. art. 10, § 1 (as amended 1966). The intangibles tax is valid under the uniformity requirement of section 1 regardless of whether it is an excise tax or a property tax.

---

**6.** Plaintiffs did not challenge the applicability of the equal rate provision of article 10, section 1 to foreign intangibles. Only a challenge under the uniformity provision is before this Court.

■ Contrary to Felix's contention, the legislature need not exempt all intangibles to meet the uniformity requirement of section 1. The Indiana Constitution as amended provides: "The General Assembly may exempt from property taxation *any* property in *any* of the following classes: ... (3) Intangible personal property." Ind. Const. art. 10, § 1 (emphasis added). Reading the constitutional provision to permit the legislature to exempt only the entire class of intangible personal property from property tax would obviate the first "any" in the sentence above. The words of the Constitution are presumed to have been carefully chosen so that each word has a meaning. *Eakin v. State ex rel. Capital Improvement Bd. of Managers* (1985), Ind., 474 N.E.2d 62; *Chadwick v. City of Crawfordsville* (1940), 216 Ind. 399, 24 N.E.2d 937. The legislature may discriminate within the intangible personal property class consistently with the uniformity requirement of section 1.

The intangibles tax satisfies the uniformity requirement of article 10, section 1 of the Indiana Constitution.

### III. 42 U.S.C. § 1983

■ Felix sought relief under 42 U.S.C. § 1983 (1988) for the intangible tax's alleged commerce clause violation, along with reasonable attorneys' fees under 42 U.S.C. § 1988 (1988). The Marion Superior Court entered summary judgment for the defendants on this claim, on the grounds that commerce clause violations are not actionable under 42 U.S.C. § 1983. In February, the U.S. Supreme Court established that commerce clause violations are cognizable under § 1983. *Dennis v. Higgins,* — U.S. ——, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991).

Regardless of the case's outcome on the merits, defendants are entitled to summary judgment on this statutory claim. When sued for damages, states and state officials acting in their official capacities are not persons under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). Plaintiffs therefore have no claim for damages under this statute. The stockholders recognize this and have retracted their claim for damages under the statute. Brief of Appellees and Cross–Appellants R. Powell Felix and Russell T. and Mary R. Clarke at 72 n. 40.

■ The stockholders still seek declaratory and injunctive relief under § 1983. *Will* recognizes that state officials can be sued for prospective relief under § 1983. 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10. No prospective relief is attainable in this case, however. The intangibles tax was repealed retroactively to November 10, 1988, by Pub.L. No. 80–1989, §§ 18–19, 1989 Ind.Acts 912, 919 (April 26, 1989). Any claim for declaratory or injunctive relief is moot. Even if the tax had not been repealed, our determination that the tax is constitutional would have resolved any claim for such relief. Plaintiffs have no cognizable suit for relief under § 1983.

### IV. Retroactivity

Both sides argue on appeal that the trial court erred in finding that members of the plaintiff class were entitled to refunds of all intangibles taxes paid May 1, 1987, or later. Brief of Appellees and Cross–Appellants R. Powell Felix and Russell T. and Mary R. Clarke at 60–61; Brief of Appellants Indiana Department of State Revenue et al. at 51. Since the intangibles tax violates neither the state nor the federal constitution, however, plaintiffs were not entitled to relief. The issue of retroactivity of relief is moot.

### V. Class Certification

The State argues on appeal that, in the event the trial court's judgment granting relief to the plaintiffs is applied retroactively, the class definition of the Felix class should be modified to conform with the requirements of Public Law 91–1989, Pub.L. No. 91–1989, § 2, 1989 Ind.Acts 953, 954 (codified at Ind.Code § 6–8.1–9–7). Since retroactive relief is not forthcoming, this issue is moot.

The shareholders argue on appeal that "[t]o the extent it takes away vested rights created by the judgment below and preex-

isting law, Pub.L. 91–1989 is unconstitutional and should not be given effect in this action." Brief of Appellees and Cross–Appellants R. Powell Felix and Russell T. and Mary R. Clarke at 65. Since the intangibles tax is constitutional, however, no rights have vested in the shareholders. The question of the constitutionality of Public Law No. 91–1989 therefore is not before the Court today.

On cross-appeal the Clarkes argue that the trial court erred in denying their motion for class certification. The Clarkes seek to represent members of a class paying intangibles taxes between March 2, 1982 and July 3, 1982, dates prior to the certification date for the Felix class. Inasmuch as the Clarkes have lost their case on the merits, their contention of error concerning their role as representatives of class members similarly situated is moot.

The trial court is affirmed in part and reversed in part. We remand this case to the trial court with instructions to enter summary judgment in favor of the defendants.

DeBRULER, GIVAN, and DICKSON, JJ., concur.

KRAHULIK, J., not participating.